## McKelvy's and Sterrett's Appeals.

1. An attorney has a lien for his services only upon a fund or upon papers which he actually has in his possession. But where a fund is brought into a Court of Equity by the services of an attorney, who looks to that alone for compensation, though his interest is not of the nature of a lien, he is the equitable owner thereof to the extent of the value of his services, and the court administering the fund will intervene for his protection, and award him a reasonable compensation therefrom.

2. The court may in such case determine itself, or through an Auditor, what is a reasonable fee, without referring the matter to a jury.

February 4th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK JJ. GREEN J. absent.

APPEALS from the Court of Common Pleas of *Crawford County*: Of January Term, 1885, Nos. 150 and 151.

Appeals of David McKelvy and W. B. Sterrett, from a decree of the said court, dismissing exceptions to an Auditor's report and awarding the sum of $800 to be paid out of a fund in court to S. T. Neill, as attorney of W. B. Sterrett.

The facts, as they appeared before the Auditor, (H. L Richmond, Jr., Esq.) were as follows: In 1870, a copartnership under the name of the Producers and Manufacturers Bank, was formed for the purpose of doing a banking business in the City of Titusville, with a capital of $100,000, divided into shares of $100. The articles of association and by-laws provided that the business of the bank should be managed by a board of seven directors, and that no stock should be transferred without the consent of a majority of the directors, or the written consent of three fourths of the stockholders. The bank continued in business till November 6th, 1876, when it closed its doors. A number of its shares had been transferred, but generally to other members of the association, and little attention was given to the mode of transfer prescribed by the by-laws. At a meeting of the shareholders held November 9th, 1876, it was resolved to make an assessment of 100 per cent. on the capital standing in the name of each shareholder, including some whose shares had been transferred, but without recognition on the part of the directors or other shareholders. Among this number were W. B. Sterrett, who had fifty-five shares, and David Emory, who had twenty-five shares. This assessment was paid, and a committee was appointed to wind up the affairs of the bank, with R. E. Hopkins as chairman, afterwards made trustee. On January 11th, 1877, the shareholders passed a resolution to procure from their number a loan of $50 per share on the capital, and to issue certificates

therefor, bearing interest—to be repaid before any dividend was made to the shareholders who had paid the assessment of November 9th, 1876. On March 13th, 1877, a similar resolution was passed for a second loan. With the amount realized in this way, the depositors were paid in full. In 1877 a bill in equity was filed by Lewis Emery, Jr. one of the shareholders, to restrain the bank from collecting certain judgments that had been entered against him. A decree having been made March 25th, 1878, that an account be taken, and Wm. S. Morris, Esq., having been appointed Master, an agreement was entered into, by which the entire business of the copartnership was to be settled, and the rights of the shareholders adjudged by the Master. Hopkins, the trustee, was appointed by the Court receiver. The report of the latter showed a fund after expenses paid of $22.098.75, to be distributed by the Master.

David Emery paid the assessment of $2,500.00 and contributed $1,250 on each of the loans, making $5,000. W. B. Sterrett paid $5,500, the amount of the assessment, and he and Emery claimed before the Master that they should severally be repaid these amounts with interest thereon out of the fund in Receiver's hands before any part of said fund was paid to the other stockholders, who had paid assessments or made loans to the trustee.

This was resisted by the general stockholders, who contended that Emery and Sterrett had not transferred their stock according to the by-laws, and that neither the directors nor stockholders had ever sanctioned said transfers.

At this stage of the proceedings, Samuel T. Neill, Esq., was retained by Wm. B. Sterrett, and on August 30th, 1880, first appeared before the Master. He was present between January 25th, and August 23d, 1881, in all eighteen different days; sometimes for a few minutes, and at others from two to six hours. The case was argued before the Master, August 22d, and 23d, 1881, and the Master's report was filed June 24th, 1882, awarding to Emery $6,621.65, and to Sterrett $7,326.91, the amounts claimed by them respectively, and to which report exceptions were filed, but after argument overruled by the court and the report confirmed. An appeal was taken by some of the shareholders December 29th, 1882, which was never prosecuted.

The amount of $5,500 assessment paid by Sterrett was loaned to him by his brother-in-law, Nelson Farel, and Sterrett assigned whatever might be obtained from the bank's assets to said Farel by paper dated June 16th, 1882, and filed June 22d, 1882, and Nelson Farel by paper dated April 13th, 1883, and filed May 14th, 1883, assigned the same to David McKelvy.

The court having on June 29th, 1883, directed the receiver to deposit the money in bank, subject to the order of the court, an agreement was at length entered into by which McKelvy was to receive $6,900 and Emery $6,000. On May 14th, 1883, when the paper settling the case was filed, motions were made on the part of McKelvy and others by counsel, other than Neill, to take the fund out of court. Neill thereupon moved to have $1,500 of the money assigned to McKelvy inpounded for his fees. An application was presented by him to the court, asking to have an Auditor appointed to fix the amount of his fees. H. L. Richmond, Jr., Esq., was appointed Auditor, and at the first meeting before him a protest was entered by Sterrett's counsel against that method of determining Neill's compensation. On January 2d, 1884, a petition was presented by Sterrett to the Auditor, who in turn presented it to the court, asking for an issue and trial by jury. This the court refused.

The Auditor awarded to Neill the sum of $800. Exceptions to this report were taken by both parties for the reasons expressed in the decree of the court.

On March 10th, 1884, the court, CHURCH, P. J., filed an opinion, holding *inter alia*, as follows: . . . . . "The amount recovered as above stated was in court pending the distribution of the cause . . . . . Sterrett, or his assignee, undertook to take this money out of court through other and different counsel, without paying his former counsel, Mr. Neill, any counsel fees whatever. Hence, upon application therefor, the court retained in its custody a sufficient sum to answer the exigency of Mr. Neill's claim, as it might afterwards be fixed. The Auditor to whom the matter was referred has taken testimony of the nature, time, and value of Mr. Neill's services, and has reported, fixing the *quantum* thereof at $800.

"Sterrett and his assignee have excepted on the ground of want of power in the court to take this action in the premises, and also that the amount is excessive.

"Neill has excepted on the ground that the amount is not sufficient.

"My own personal belief is that the amount awarded him might well have been larger under the evidence in the case, and the circumstances of the services rendered; but while the report of the Auditor has not quite the same force as the verdict of a jury, yet I cannot say that the court would feel warranted in adding to the amount fixed by the Auditor. I am also constrained to abide by his report in the belief that both parties may acquiesce in the present adjustment of the controversy. It is an unpleasant thing for a lawyer to have a contention in court in the matter of his fees, and it is an ungra-

cious thing for a suitor who has been most successful in his suit, and after owing his success to able, active and vigilant counsel, to contend with his counsel on a mere question of technicality.

"There is ample evidence to show that Mr. Neill's remun eration was to a great extent, if not altogether, dependent upon a successful issue of the litigation, and in the language of a witness, ' he was to take his pay out of what he recovered.' What he recovered was in court; he therefore had a lien on this sum for his compensation, and he as counsel would have been entitled to take his client's money out of court and pay himself out of it on settlement with his client.

"Why then cannot the court having control of this money enforce this lien by making the award asked for? Why turn the attorney over to an insolvent client to make out his case before a jury? This action of the court is not depriving either party of the right of trial by jury in any proper or just sense. It is the enforcement of a lien that the law gives the attorney on his client's money when he collects it. As well might the client when his attorney has collected a debt for him, be it large or small, say to the attorney, pay me the whole and sue me for your fees, for I demand my constitutional right to a trial by jury.

"The view I take of this case under the peculiar circum- stances thereof does not need that it should militate against the principle of Dubois's Appeal, (38 Pa. St. Rep., 231), because here there is evidence to show an explicit understand- ing between counsel and client that the former was to look to this fund exclusively for his remuneration, and was to get nothing if he did not recover a fund for the purpose."

The exceptions filed to the Auditor's report were therefore dismissed, and the report was finally confirmed. McKelvy and Sterrett thereupon took these appeals, assigning for error the referring of Sterrett's petition to an Auditor, the refusal to award an issue, and the confirming of the Auditor's report.

*F. B. Guthrie (Julius Byles* with him), for appellants.—The right of trial by jury has always been jealously guarded in Pennsylvania. The question here was one purely of fact, and the issue was demandable of right: North Penna. Coal Co. *v.* Snowden, 6 Wr., 488; Norris's Appeal, 14 Sm., 275; Tillmes *v.* Marsh, 17 Id., 511; Bichel *v.* Rank, 5 W., 140; Trimble's Appeal, 6 Id., 133. An attorney has no lien on a fund in court. His right to deduct a just compensation from money collected by him is a right to defalcate rather than lien. Dubois's Appeal, 2 Wr., 234; Balsbaugh *v.* Frazer, 7 H., 95

Walton *v.* Dickerson, 7 Barr, 376; Irwin *v.* Workman, 3 W., 357.

*J. B. Brawley* (*M. J. Heywang* with him), for appellee.— The entire proceeding in this case was an equitable one. The labor of the appellee had produced this fund to which alone he was to look for compensation. It was therefore subject to an express as well as an implied trust, which the court had a right to enforce. The verdict of a jury in equity cases is merely advisory, and of no binding importance: Brightly's Eq., 541, Genet *v.* Canal Co., 13 Phila. Rep., 533. The court is the proper tribunal to determine the compensation of attorneys; Daly *v.* Maitland, 7 Nor., 387. An attorney has a lien upon a judgment or decree obtained for his client, for his services in procuring that judgment: Central Land Co. *v.* Calhoun, 16 West Va. Rep., 361; Wilkins *v.* Carmichael, 1 Doug., 101; *In re* Knapp, 85 N. Y., 284; Read *v.* Dupper, 6 Term Rep., 361; 2 Kent's Com., *641.

Mr. Justice PAXSON delivered the opinion of the court, March 9th, 1885.

The issue asked for was properly denied. A Court of Equity has little need to call in the aid of a jury to fix the compensation of an attorney for professional services. In Daly *v.* Maitland, 7 Norris, 384, it was decided that where a mortgage contained an agreement for an attorney fee, it was the province of the court to decide whether the amount claimed was reasonable. The same rule was followed in Imler *v.* Imler, 13 Norris, 372, and other later cases. The claim here was upon a fund raised in a Court of Equity, and within its actual control. It was for services connected with that fund. The learned judge was certainly competent to fix the value of those services; in no event could a jury render him any assistance or enlighten his judgment.

With the result reached by the court below we are entirely satisfied. But while we affirm the decree we do not do so upon the ground that the appellee had a lien upon the fund in court. As a general rule an attorney has a lien for his services only upon what he has in his possession. If he has papers, he may retain them until paid for his services in regard to the particular case to which they belong. If he has money in his hands which he had collected he may deduct his fees in that particular collection and pay over the balance. Yet according to Dubois's Appeal, 2 Wright, 231, this right is one of defalcation rather than lien. The word "lien" is sometimes used without due regard to its legal meaning, and we

must be careful to avoid the consequences of such misapplication.

The decree below, however, may be affirmed upon solid grounds. The fact is found by the Auditor and the court that the appellee was to look to this fund for his compensation. Its existence is due in great measure to his professional services. To the extent of the value of those services, then, the fund belonged to him; that is to say, he was the equitable owner thereof to the amount of his fee. When, therefore, it was discovered that the appellant was endeavoring to take the fund out of court by the aid of other counsel, thus ignoring the appellees claim, the court below did right in laying its hand upon such a proceeding. It was acting as a Court of Equity; it was administering a fund within its actual grasp, and it was entirely competent to dispose of every question connected with that fund. It had been in the hands of a receiver but the receiver had paid it into court. The allowance of counsel fees touching a fund in equity has always been under the control of a chancellor. As was said by Justice SHARSWOOD in Freeman *v.* Shreve., 5 Norris, 135: "It is true that a chancellor will, out of a fund for distribution, order compensation to the counsel engaged in his sound discretion, according to his estimate of what they reasonably deserve to have. He will often order such compensation to the counsel of a losing party who is decreed to have no interest, on the equitable ground that being a necessary party he was compelled to litigate, or had sufficient reason. It is a charge which the fund ought in equity and good conscience to bear."

The compensation allowed the appellee was reasonable, regard being had to the character of his services and the result obtained, and his right to be paid out of the fund is clear.

> The decree is affirmed and the appeals dismissed at the costs of the respective appellants.