## SMEDLEY et al. v. SPECKMAN.

(Circuit Court of Appeals, Third Circuit. December 11, 1907.)

### No. 23.

1. ASSIGNMENTS—MODE AND SUFFICIENCY—EQUITABLE ASSIGNMENT.

A mere promise, although of the clearest and most solemn kind to pay a debt out of a particular fund, is not an assignment of the fund, even in equity; but, to make an equitable assignment, there should be such an actual or constructive appropriation of the subject-matter as to confer a complete and present right on the assignee, even where the circumstances do not admit of its immediate exercise and to divest the assignor of control over the fund.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 4, Assignments, §§ 107–111.]

2. JUDGMENT—MOTION FOR JUDGMENT NON OBSTANTE VEREDICTO—GROUNDS.

In an action by the trustee of an individual bankrupt to recover an alleged preferential payment made by him, the objection that plaintiff cannot maintain the action because the payment was made from money belonging to a partnership, and not to the bankrupt individually, cannot be made for the first time by motion for judgment notwithstanding the verdict. where the pleadings and trial proceeded on the theory that the money was that of the bankrupt.

In Error to the District Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 153 Fed. 771.

Henry K. Fries, for plaintiffs in error.

Robert J. Byron, for defendant in error.

Before DALLAS and GRAY, Circuit Judges, and CROSS, District Judge.

GRAY, Circuit Judge. This was an action brought in the court below by the defendant in error and plaintiff below, trustee of the estate of George W. Pierson, bankrupt, to recover from the plaintiffs in error and defendants below the sum of $5,000, paid to them by the said bankrupt, on September 22, 1903, which payment the trustee alleged was made within four months of the filing of the petition in

bankruptcy, when Pierson was insolvent and under such circumstances as to constitute a preference under section 60a of the bankruptcy law, as amended, and that the plaintiffs in error had knowledge, or reasonable cause to believe, that such preference was intended by Pierson. The said trustee, therefore, claimed the right to recover the sum so paid under section 60b of said act, as amended. The record and the agreed statement of facts disclose the following:

On October 19, 1903, a petition in involuntary bankruptcy was filed against the said George W. Pierson, who was adjudged a bankrupt March 10th, 1904, and on April 12th, following, the said John W. Speckman was duly elected trustee of the bankrupt's estate, and the case was referred to a referee in bankruptcy. The bankrupt had been engaged for several years in the contracting and building business, and immediately prior to his adjudication, had been engaged in erecting certain buildings for the United States government, at the Frankford arsenal, Philadelphia, for which the said bankrupt, Pierson, individually, had two written contracts with the United States government, the first of which called for buildings designated as A and B, and the second for buildings designated as C and D. The greater portion of the work to be done under these contracts had been given out by Pierson, to various subcontractors and materialmen, among the latter being the plaintiffs in error. On September 22, 1903, the final payments, amounting to about $17,000, on the contract covering buildings A and B, were made to Pierson by the United States government, acting through Col. Heath, the commanding officer of the Frankford arsenal and government agent in respect to said work. At this time, Pierson was indebted to plaintiffs in error, for materials furnished for buildings A and B, to the amount of $5,400, the payment of which had been repeatedly requested by plaintiffs in error prior to September, 1903. At the time of this payment, Smedley Bros., the plaintiffs in error, were present, by arrangement with Pierson, and Pierson, having received, at his request a cheque for $5,000 from the government agent, Col. Heath, indorsed the same over to Smedley Bros., on account of his said indebtedness to them.

This payment having been made within little more than one month of the filing of the petition in bankruptcy, the defendants below contended that said payment was made pursuant to an arrangement between Pierson and said defendants entered into long prior to, and not within the four months preceding, the filing of the said petition; that said arrangement amounted to an equitable assignment of $5,400, out of the moneys due or to become due from the government, on account of work done by Pierson; that therefore the transfer of property, complained of by the trustee as preferential under said section 60a, was really made at the time of said equitable assignment, and more than four months before the filing of said petition. The case was submitted to the jury by the learned judge of the court below, reserving the point, whether there was any evidence to show that the payment in September was made to carry out an equitable parol assignment of the $5,000, which was said to have been made early in 1903, out of a fund which the bankrupt then claimed to be due him from the United States. The verdict for the plaintiff having established the facts that the bank-

rupt was insolvent when the payment was made, and that the defendants had reasonable cause to believe that a preference was thereby intended, the court decided the point reserved adversely to the defendant, being of opinion that there was no evidence to establish the equitable assignment contended for.

In the argument for a motion for judgment non obstante, on the point reserved, defendants raised the point, upon certain testimony brought out on cross-examination at the trial, that the said moneys, out of which the alleged preferential payment was made, were moneys, not belonging to Pierson individually, but, to a partnership, consisting of Pierson and a man named Stewart, and that being such, said moneys could not be administered as the property of the individual partner. As to this contention, the learned trial judge decided that, no notice of the point having been given by the pleadings, nor until the trial, and then only by such meager testimony as fell from the lips of two witnesses on cross-examination, it was made too late and could not then be considered. The motions for a new trial and for judgment notwithstanding the verdict, were refused, to which refusal exceptions were duly taken.

Upon the two assignments of error contained in the record, the argument of the plaintiffs in error has been presented under three heads:

"(1) John W. Speckman, as trustee in bankruptcy for George W. Pierson individually, has no right to recover partnership assets.

"(2) Under the state of the record plaintiffs in error had the right to raise the question of the existence of a partnership at the trial.

"(3) The agreement made in January, 1903, between Smedley Bros., George W. Pierson and Col. Heath, amounted to an equitable assignment, and the subsequent payment of the money on September 22, 1903, did not make it a preferential payment."

We will consider first the last head, as presenting what seems to us the most important question, and it is one which the learned trial judge said, in his opinion on the point reserved, constituted the defendant's chief reliance at the trial. Aside from the consideration of the effect of section 3477 of the Revised Statutes [U. S. Comp. St. 1901, p. 2320] upon the assignment of claims upon the United States, it may be admitted that, if there had been a clear and unequivocal assignment to plaintiffs in error, whether in writing or by parol, of a portion of the funds in the hands of Col. Heath, executed more than four months before the filing of the petition in bankruptcy, and accepted and agreed to by Col. Heath, such an assignment would have been valid, and though the money covered by such assignment was paid within four months of the filing of the petition in bankruptcy, it could not have been recovered by the trustee as a preference.

The order or assignment contended for in the present case was not in writing. It is contended, however, that there was such a verbal arrangement between the bankrupt and the plaintiffs in error more than four months before the filing of the petition in bankruptcy, as would constitute a valid equitable assignment. There is no evidence that Pierson at any time authorized Heath, the government agent, to pay the defendant's claim. The whole testimony bearing on this ques-

157 F.—52

tion is meager and inconclusive, both as to what the arrangement between Pierson and the plaintiffs in error was, and as to the time and circumstances when and under which it was made. The testimony, as relied upon by plaintiffs in error to establish this equitable assignment, is, in substance, as follows:

Wm. H. Smedley, one of the defendants below, testifies:

"The arrangement was made with Col. Heath and Mr. Pierson. It was in the early part of 1903. We furnished the material for this job, in 1901 and 1902. It was all completed. We had one payment of $700, I think it was, in September, 1902. Immediately after the first of the year, as is our custom, we took up this account and, in conversation with Mr. Pierson, he told me that, on account of certain delays, they had been held up in their payments and so on, and we would get the whole amount of our money at the time of settlement; and he said that he would make some arrangement with Col. Heath to that effect. I went to see Col. Heath, and he assured me about the amount of money they had, and said he would arrange I should be present at the settlement and get whatever money was due."

The date of this visit to Col. Heath is not stated. The same witness also testifies that he had conversations with Pierson in 1903, during the first of the year 1903, in which he stated that he "wanted to collect the balance due, and he assured me that this contract was held up —as I know it was—on account of material people being slow in delivering material; and he assured me there was ample money and, at the final settlement, I should have the whole amount. And to confirm that, he also arranged that I could see Col. Heath to verify anything he said—which I did—and Col. Heath verified what he said; told me the amount of money that was due him and agreed to notify me of the settlement, and arranged with me to be at the settlement."

Franklin Smedley, the other partner of Smedley Bros., testifies:

"Yes, we had a verbal agreement with him (Pierson) for sometime, that this bill against the arsenal would be paid at the final settlement."

Col. Heath the government agent, testifies as to this settlement on the 22d of September, 1903, that he disbursed about $17,000; that Mr. Smedley was present and three others, creditors of Pierson; that the three other persons were paid upon written orders given by Pierson several months before, but how long before, the witness could not state exactly. As to Smedley, he was asked if there were not some verbal arrangement made sometime prior, but what that verbal arrangement exactly was, the witness, on being interrogated, could not state.

This is all the testimony that has any bearing upon the contention that there was an equitable assignment of a fund in Col. Heath's hands more than four months prior to the filing of the petition in bankruptcy. It is evident that the arrangement which Col. Heath speaks of, as having been made sometime prior to the settlement with Smedley, was as testified to by William Smedley himself, viz.:

"I went to Col. Heath and he assured me about the money they had, and said he would arrange I should be present at the settlement and get whatever money was due."

It is only necessary to read this testimony to at once see how far short it is of establishing the essential elements of an equitable assign-

ment. The whole arrangement, so-called, between Pierson and the Smedley Bros., was only an assurance on Pierson's part that he would be in funds sometime soon, at the final settlement with the government for what was due upon his contracts, and that at that settlement they should be paid the money due them. This was a mere promise on Pierson's part, and an assurance to his creditors of his ability to keep it, by pointing out when and from what source he would be able to pay. Col. Heath's testimony does not change the character of the arrangement, as thus interpreted, but merely shows a kindly disposition on his part to forward the arrangement, by assuring Smedley that Pierson's statement as to the settlement to be made was true, both as to amount due and time of payment, and the further undertaking to notify Smedley of the settlement was that he might be present to protect his interests. Certainly there is nothing in all this to evidence an appropriation of the $5,000 paid by Pierson on September 22d, while in Col. Heath's hands, or of any undertaking by Col. Heath, or obligation imposed upon him with reference to said sum, to hold it, as belonging under an assignment to the plaintiffs in error. If there had really been a valid equitable assignment, it would not have been necessary for Col. Heath to have given notice to Smedley to be present at the settlement, as the payment could not have been made by him, except wrongfully, to Pierson. As a matter of fact, the payment was made by a cheque to Pierson's order, and then, when it was beyond Col. Heath's control, was indorsed by him to the plaintiffs in error.

This testimony falls far short of evidencing the absolute appropriation by the assignor of the fund sought to be assigned, which is a fundamental requisite of a valid assignment, nor is there any evidence of that surrender by the assignor of all control over the fund that the law requires. A mere promise, though of the clearest and most solemn kind, to pay a debt out of a particular fund, is not an assignment of the fund, even in equity. To make an equitable assignment, there should be such an actual or constructive appropriation of the subject-matter as to confer a complete and present right in the party meant to be provided for, even where the circumstances do not admit of its immediate exercise. If the holder of the fund retain control over it, it is fatal to the claim of the assignee. "The transfer must be of such a character, that the fund holder can safely pay, and is compellable to do so, though forbidden by the assignor." Christmas v. Russell, 14 Wall. 69, 20 L. Ed. 762.

In the view taken, it is not necessary to consider the effect of section 3477, though it may well have been necessary to do so, had the elements of an equitable assignment been present in this transaction. That section declares that all "transfers of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, * * * shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof." We suggest, therefore, without deciding, that it would have been out of the

power of Pierson to have put his claim against the United States beyond his control and to make an effectual appropriation of it, in whole or in part, to his creditor (Trist v. Child, 21 Wall. 441, 22 L. Ed. 623), except by complying with the conditions of this law.

We think, therefore, the court below was correct in its decision upon the point reserved, in refusing to grant, upon the ground stated, the motion for judgment, notwithstanding the verdict.

As to the point made in argument of defendants' motion in the court below, and before us, that the plaintiffs in error had the right to raise at the trial the question of the existence of a partnership, we have only to say that the testimony in regard to it, as disclosed in the record, is extremely slight. It consists entirely of an answer made by Pierson, on cross-examination by counsel for the plaintiff-trustee. It is as follows:

"Q. Who kept your books, Mr. Pierson? A. My partner, E. J. Stewart."

And in an answer by the same witness, when asked if he ever had the books, showing his financial condition, he said:

"I had not. My partner always had the books."

And Mr. Stewart, when cross-examined by counsel for plaintiff-trustee, said he was the gentleman spoken of by Mr. Pierson.

These statements, almost casual as to the manner in which they were made, were not followed up by counsel for the defendants. No further examination was made of these witnesses, as to the fact of partnership, as to when it was formed, how long it existed, what were its terms and conditions, and as to whether, even if they were partners as to these contracts, Stewart was a partner as to the fund in Col. Heath's hands, or whether his interest in the same had been satisfied. The evidence of partnership, such as it is, does not show that the moneys received by the plaintiffs in error were partnership moneys, or partnership assets, nor was any inquiry made to show whether this conclusion of law by Stewart and Pierson was correctly founded upon facts, whether there was such an agreement between them as constituted a partnership as to these funds, or whether the agreement, though called by them a partnership, might have been of a different character. So far as the record discloses, no importance appears to have been attached by counsel on either side to these statements, and as they were absolutely inconsistent, so far as the fund here in question is concerned, with the other evidence in the case, we may well suppose that insistence upon them was not thought advisable. On the other hand, the testimony is overwhelming, that Pierson made the contracts with the government in his own name, and contracted with the subcontractors and suppliers of material in the same way, that his individual orders were accepted, and that money was paid him, both by the government agent and by the trustee, as one whose individual interest alone was involved, and Stewart, moreover, the alleged partner, assisted Pierson in obtaining the money in his own name from the trustee, on the distribution made by him, without any suggestion or intimation of any partnership, or other interest therein. It is very certain that if there were a partnership, it had been carefully concealed,

and the trustee was in no position to know the facts, and cannot be brought within the rule that pleading or notice is not necessary against one who is in a better position to know the facts than the other party to the controversy. The defendants had better opportunity of knowing the facts than the trustee in bankruptcy. Not only was there no pleading, or other notice of this alleged partnership, but the affidavit of defense, filed by the defendant, expressly ignores it, and among other things avers:

"That it is true that defendants, on or about September 22, 1903, received the sum of $5,000 from Maj. Heath, commanding the Frankford arsenal, which by previous arrangement the said George W. Pierson had agreed should be paid to defendants out of money due him for work at the Frankford arsenal."

Again, farther on in the same affidavit, the appellants speak of the moneys as due to them for material furnished to the bankrupt, "in performance of his contract for the erection of certain buildings at said arsenal, and in pursuance of an understanding previously made with the said George W. Pierson."

Substantial justice and the absence of any pleading, or other notice given to the plaintiff of such a defense, forbid the question being entertained in the final disposition of the cause. Concurring, as we do, in the opinion expressed by the trial judge on this point, we cannot do better than quote his language:

"The defendants seek to raise another question of law upon the motion for judgment, based upon the meager testimony concerning partnership of one kind or another, which is said to have existed between the bankrupt and a man named Stewart. It is argued that the preferential payment was made out of a fund that belonged to Stewart and the bankrupt as a firm, and therefore that the plaintiff—who is trustee of Pierson alone, no petition having been filed against the firm—has no right to recover in this action. In my opinion, however, this defense is made too late. It concerns the character in which the plaintiff sued, and in correct practice should have been made earlier in the cause, probably by plea in abatement, but no such plea was filed, and even under the liberal practice in Pennsylvania, it is impossible to overlook the fact that this defense was not referred to in the affidavit of defense, or in the notice of special matter, which accompanied the general issue pleas. In consequence, the plaintiff had not notice of the point until the trial, and even then, as the record shows the defendants' chief reliance was upon the making of an equitable parol assignment early in 1903. I do not think, therefore, that the defendants should be allowed to take their chance of a verdict on the principal issue, and practically to reserve the question of partnership, in order to use it in case of failure to maintain their principal contention successfully."

The judgment below is therefore affirmed.