## In re GEORGE WALTER & SONS, Inc.*

(District Court, W. D. Pennsylvania. March 9, 1925.)

No. 11418.

I. Corporations ⬅380—Board of Commerce held to have power to act as agent for its members.

A Board of Commerce, incorporated under the law of Pennsylvania, held to have power to act as agent for its members in collection of overcharges paid by them to railroad carriers, and to contract for compensation for its services.

*Decree modified — F.(2d) —.

**2. Bankruptcy ⊜═188(3)—Contract to pay commission held not an equitable assignment.**

A contract by bankrupt to pay to a Board of Commerce of which it was a member "a commission of 50 per cent. on all moneys received" from railroad companies for freight overcharges paid, as compensation to the board for its services in prosecuting the claims as agent of bankrupt, *held* not an equitable assignment of one-half the money paid by a railroad company to bankrupt's receiver on account of such claim, but to make the board only a general creditor of the bankrupt's estate.

**3. Bankruptcy ⊜═188(3)—Agent held not entitled to equitable lien on fund for services.**

An agent, which acted for bankrupt in the prosecution of a claim, *held* not entitled to an equitable lien for its compensation on the fund recovered and paid directly to bankrupt's receiver.

In Bankruptcy. In the matter of George Walter & Sons, Inc., bankrupt. On review of findings of referee. Reversed and referred back.

Marshall & Watson, of Butler, Pa., for Butler Board of Commerce.

W. Z. Murrin and James M. Galbreath, both of Butler, Pa., for trustee.

SCHOONMAKER, District Judge. This case now comes before the court on petition of the trustee in bankruptcy for review of action of referee in allowing a certain claim of the Butler Board of Commerce. The referee's certificate presents six questions for review, but the argument of counsel and the six questions presented by the referee only really involve two questions. The first involves the corporate authority of claimant, the Butler Board of Commerce, a corporation of the first class under the laws of Pennsylvania, to act as the agent for its members in the collection of excess freight charges paid by its members to the railroad corporation. The second involves the right of the claimant, the Butler Board of Commerce, to recover from the bankrupt 50 per cent. of the sum of $1,641.75, excess freight charges paid by the Baltimore & Ohio Railroad Company by check payable to the order of George Walter & Sons, Inc., of Butler, Pa., but delivered to the receivers in bankruptcy after the appointment of receivers and cashed by the said receivers, whereby the said sum came into the bankruptcy court for distribution.

The Butler Board of Commerce claimed that it was instrumental in the collection of this fund, and that the bankrupt's claim for overcharge against the Baltimore & Ohio Railroad Company was presented to the traffic bureau of the Butler Board of Commerce for collection under the terms of a written agreement dated February 1, 1923, wherein the board agreed to serve its members, of whom the bankrupt was one, in "the presentation of loss and damage and overcharge claims," among other services, and in consideration of which the bankrupt, among other members of the board, "hereby agree to pay to the party of the first part [Butler Board of Commerce], a commission of 50 per cent. on all moneys received as the result of auditing freight or express bills, and a commission of 25 per cent. on all moneys received as the result of prosecution of loss and damage claims." In connection with this contract, the bankrupt, among the other members signing the contract, agreed to underwrite the operating expenses of the board for one year from February 1, 1923, to the extent of the amount set opposite their respective names signed to the said agreement. The bankrupt in this case underwrote $100. These amounts were to be refunded to the members out of moneys received on the commission. On February 1, 1924, a new contract was made between the bankrupt and the Butler Chamber of Commerce, whereby the board agreed to perform the same services, but, instead of receiving a commission on moneys recovered, the bankrupt in this case agreed to pay a full $200 for the whole year's services.

In the instant case, the board is claiming a commission under the 1923 contract on moneys received as the result of auditing freight bills. The particular claims and freight bills involved were handed to the board on the 7th day of November, 1923, but no collection was made thereon during the year beginning February 1, 1923. After the 1924 contract became effective, work was done on these freight bills by the Butler Board of Commerce, for which service the bankrupt had agreed to pay, and the board had agreed to receive as full payment, the sum of $200 per year. The referee decided that the contracts involved in this case were not ultra vires the corporation, the Butler Board of Commerce, and that the sum of $1,641.75 paid to the receivers in bankruptcy as overcharges on freight payments made by the bankrupt to the Baltimore & Ohio Railroad Company came within the terms of the 1923 contract, that that contract was in legal effect an equitable assignment of 50 per cent. of all moneys collected thereon, and that the Board of Commerce had an equitable lien on all sums so collected for

the amount of its agreed percentages. The trustees in bankruptcy now claim that the referee erred in so finding.

[1] We find no fault with the referee's conclusions, so far as concerned the ultra vires of the Butler Board of Commerce. We see nothing in the act of the Pennsylvania Assembly under which it was chartered which would prevent it from rendering to its own members the service which it did render under the contracts of 1923 and 1924. There was no evidence that the incomes of the Board of Commerce from these sources exceeded the annual income which corporations of the first class in Pennsylvania are authorized to receive. At any rate, it is doubtful whether any one but the commonwealth of Pennsylvania might raise this question.

[2] On the second proposition, however, we cannot agree with the conclusions of the referee. We see no basis on which it may be properly held that the Butler Board of Commerce has an equitable assignment or an equitable lien upon the moneys received on these excess freight claims. In the first place, we are inclined to the opinion that, inasmuch as this recovery was made in 1924, the 1924 contract would cover the rate of compensation to be paid by the members, and that $200 would be the only sum that could be recovered by the Board of Commerce on that contract; but, even granting that the contract of 1923 is the controlling contract in the instant case, we are still unable to agree with the findings of the referee. It will be noted that the bankrupt's contract is to pay a commission, and that the rate of the commission is fixed at 50 per cent. of the amount recovered. There is no provision in the contract that this commission is to be paid out of the particular fund recovered, nor is there any provision in the contract assigning to the Board of Trade any part of the moneys received.

The United States Supreme Court has very clearly stated the rule with reference to equitable assignments, as follows:

"An agreement to pay out of a particular fund, however clear in its terms, is not an equitable assignment; a covenant in the most solemn form has no greater effect. The phraseology employed is not material provided the intent to transfer is manifested. Such an intent and its execution are indispensable. The assignor must not retain any control over the fund, any authority to collect, or any power of revocation. If he does, it is fatal to the claim of the assignee. The transfer must be of such a character that the fundholder can safely pay, and is compellable to do so, though forbidden by the assignor." Christmas v. Russell, 14 Wall. (81 U. S.) 69, 84 (20 L. Ed. 762).

Mr. Justice Gray, of our own Circuit Court of Appeals, has announced the same rule in Smedley v. Speckman, 157 F. 815, 85 C. C. A. 179.

It will be noted, therefore, that under these decided cases the agreement in question cannot be considered as an equitable assignment of 50 per cent. of the amount collected. It is but a mere general agreement on the part of the bankrupt in this case to pay a commission, the amount of which is determined by the agreement to be 50 per cent. of any sum recovered. The Butler Board of Commerce does not have assigned to it any part of the sums collected. The commission is not payable out of the funds recovered.

[3] Now, on the question of equitable lien, we have not here presented that type of case which would justify us in holding that the Board of Commerce had an equitable lien upon the fund collected in this case. In the first place, the cases that establish the doctrine of equitable lien are cases where the funds or money are in the hands of a party claiming the fund or lien. In the instant case, the fund in question was never in possession of the claimant. The check for the amount recovered was made payable to the bankrupt, and it was turned over to, and collected by, the receivers in bankruptcy. It did not pass through the hands of the Board of Commerce, and could not be impressed with any lien such as might accrue to attorneys and factors who have funds or property in their hands which may be made liable for special services rendered the owners of funds or property.

The referee has cited the case of McKelvy's and Sterrett's Appeals, 108 Pa. 615, which holds that an attorney has a lien for his services only upon a fund or papers which he is actually in possession of. It further holds that, where a fund has been brought into a court of equity by the services of an attorney, then the court had the right to allow out of that fund reasonable counsel fees as a charge which the fund ought in equity and good conscience to bear.

Now, in the instant case, the claimant is not an attorney at law, and has not brought into the court the funds which the claimant is asking to impress with an equitable lien for services in bringing the money into court,

but is relying on the written promise of the bankrupt to pay 50 per cent. of the amount recovered by the bankrupt. To the extent of that claim we regard the Butler Board of Commerce as a general creditor, entitled to no other or greater preference than any other creditor who rendered services to the bankrupt. Further, the Butler Board of Commerce is appealing to a court of equity to charge upon this fund such sum for services of the Butler Board of Commerce as the fund ought in equity and good conscience to bear. That is the basis upon which the court of equity allows compensation to attorneys who have brought funds into a court of equity for distribution. And in this connection we certainly could not make the allowance claimed, as in our judgment 50 per cent. of the amount recovered would be an unreasonable charge upon the fund for the service rendered. Here we have a petition by the Butler Board of Commerce laying claim to one-half the check for $1,641.75 turned over to the receivers, together with an additional sum of $125.75, which it claims was the cost of prosecuting the claim, alleging that these sums never became a part of the assets of George Walter & Sons, Inc., but are the actual property and money of the Butler Board of Commerce, temporarily mingled with the assets of the bankrupt.

Now, the only basis upon which the petition can rest, if at all, would be on the basis of an equitable assignment of the sum involved in this case. But, as we have already pointed out, the courts have held that an agreement to pay out of a particular fund will not operate as an assignment of the whole or any part of such fund. If the question before us was whether the Board of Commerce should be awarded a reasonable compensation for the auditing of these freight bills, we would not regard the amount now claimed by the Butler Board of Commerce as a reasonable sum to be allowed the board for its services, having regard to the character of the services, the results obtained, and its right to be paid out of any fund in question. We certainly would not award them one-half of this fund. It appeals to us that such an allowance would be entirely unreasonable, in view of the services rendered. We do not see any basis upon which the referee's finding may be sustained, either that the Board of Commerce is an equitable assignee of the fund in question or has an equitable lien upon it.

An order may therefore be entered reversing the referee's order, directing the trustees in bankruptcy to pay over to the Butler Board of Commerce the sum of $946.-62, being the commission claimed under the alleged contract.