[No. 3086, Sept. 27, 1927.]

## KAHNT v. JONES McKEEN MERCANTILE CO. et al.

### [260 P. 673.]

#### SYLLABUS BY THE COURT

A debtor's mere promise to pay out of a particular fund is insufficient to charge the fund with an equitable lien.

Appeal from District Court, Bernalillo County; Helmick, Judge.

Suit by F. P. Kahnt against Fred Lant and others, in which the Jones McKeen Mercantile Company and Louis Jones intervened. From part of the judgment in favor of the interveners establishing equitable liens in their favor, plaintiff appeals. Reversed and remanded, with direction.

Hanna & Wilson, of Albuquerque, for appellant.

James G. Fitch, of Socorro, for appellees.

#### OPINION OF THE COURT

WATSON, J.    This litigation arises out of the following contract:

"This memorandum of agreement, made this 30th day of September, 1920, between Fred P. Kahnt, party of the first part, of the county of Bernalillo and state of New Mexico, and Fred Lant, of Reserve, Socorro county, state of New Mexico, witnesseth:

"That, whereas the said Fred P. Kahnt is contemplating purchasing from Walter Jones all of the certain cattle described in a certain chattel mortgage recorded in volume 83 of Chattel Mortgages recorded at pages 548, 549 of the records of Socorro county, which cattle are located in the Frisco district, Socorro county, N. M., which cattle are described in said chattel mortgage as being all of the cattle in

---

[1] 5CJ p. 913 n. 35; p. 914 n. 36, 37; 21CJ p. 118 n. 35; p. 119 n. 47, 51; 37CJ p. 317 n. 86, 87; p. 318 n. 92.

FXO brand ranging and being in the Frisco district, Pleas-
onton community allotment, together with all increase
thereof; and, whereas, if the said Fred P. Kahnt, party of
the first part, carries through the aforesaid transaction,
then the said Fred Lant, party of the second part, agrees
to operate, manage, and care for the aforementioned cattle
on the ranch aforementioned, and as a salary he shall not
receive any money, but shall have his expense and family
support out of the steer money, and the steer money shall
be all the money out of which the said party of the second
part shall have any money, and of this money he shall keep
up all the expenses of the entire equipment.

"It is further agreed by and between the parties hereto
that whatever salary that the party of the second part
may have shall come out of whatever profit that may ac-
crue out of the aforementioned equipment in the event of a
sale, and in that event the party of the second part agrees
to take as his part one-half of the amount of the price ac-
quired above $17,850 and accrued interest."

Following the making of this contract Kahnt pur-
chased the cattle mentioned, and Lant took over the
management of the outfit.

June 4, 1923, Kahnt commenced suit, alleging that
Lant had, without plaintiff's authority, sold steers and
other cattle, and applied the proceeds to his own use;
that he had failed and refused to keep up the expense
of said ranch and cattle, and that plaintiff had been
compelled to pay large sums as taxes and grazing
charges; that, although often requested by plaintiff to
pay such expenses, and to account to plaintiff for the
receipts from sales and the expenses of the ranch paid
by him, Lant had refused so to do; that Lant had con-
tracted to certain buyers approximately 225 head of
steers, upon which $900 of the purchase price had been
paid to, and was then held by, the American National
Bank, of Silver City; and that, unless restrained, Lant
would appropriate to his own use the full amount of
the purchase price of said steers; that, if Lant were
allowed to continue in control of the ranch and cattle,
the same would suffer from neglect and abuse. Upon
these allegations plaintiff prayed for an accounting
for an injunction to restrain the buyers and the Ameri-
can National Bank from paying over to Lant any of
the proceeds from the sale of steers; that Lant be re-
strained from exercising further control over the prop-

erty, or from interferring with plaintiff in taking complete charge and control of the same, and for judgment for such sum as might be due plaintiff upon accounting.

Upon this complaint a temporary injunction was issued as prayed, and later a receiver was appointed to take charge of the property. Upon final hearing, the issues were found in favor of the plaintiff, and all of the rights of defendant Lant under the contract were terminated. None of the defendants have appealed.

Petitions in intervention were filed by Jones McKeen Mercantile Company and Louis Jones, praying for equitable liens upon the proceeds of the sale of the steers, and that, in case such proceeds should be insufficient, they be given equitable liens upon all steers unsold. The basis of the claims of the interveners was that, in reliance upon the contract, and upon the promise of both Lant and Kahnt to pay them out of the sales of steers, they had furnished family and ranch supplies to Lant, for which they had not been paid. The court gave judgment in favor of the interveners, requiring the proceeds of the sale to be paid into court, and thence pro rata to the interveners; and decreed, further, that, if such proceeds should be insufficient to meet their claims, the receiver sell all remaining steers at public sale, and that the proceeds thereof be applied in satisfaction of the interveners' claims. From this part of the judgment the plaintiff has appealed.

In disposing of the case at the conclusion of the hearing, the court remarked:

"As to the interveners, I am not at all sure that the circumstances in this case are sufficient to impose an equitable lien. However, the court is inclined to believe that an equitable solution of this situation requires that these creditors be taken care of. The court bases that on all the circumstances of the case, not on any particular circumstance, perhaps."

So the court pointed to no particular facts and to no definite principle which he considered as entitling the interveners to liens. For the theory of the judgment we turn to appellees' brief. The only decision cited is

540       SUPREME COURT OF NEW MEXICO

Kahnt v. Jones McKeen Merc. Co. et al., 32 N. M. 537

Williams v. Harlan, 88 Md. 1, 41 A. 51, 71 Am. St. Rep. 394, which counsel consider "directly in point on one phase of the present case." What phase he does not state. As we read that decision, it is concerned more with the principle of subrogation; it not being doubted that the complainant's debtor, had he asserted the right, would have been entitled to an equitable lien. Counsel also cite general statements as 3 Pom. Eq. Jur. (4th Ed.) §§ 1235, 1237, 1238, and 1239; Stories' Eq. Jur. § 1234; 17 R. C. L. "Liens," §§ 12 and 14; 21 C. J. "Equity" 96. As we understand their contention, it is that appellant had appropriated a fund to be derived from sales of steers to the purpose of maintaining Lant's family and meeting the ranch expenses. Equity has, of course, long recognized that a debtor may make an assignment or appropriation of a particular fund which will give rise to a lien upon it in favor of his creditor.

We may assume, for the purpose of this case, that the written contract was a sufficient appropriation of the steer money, so that Lant himself, had he performed his contract, might have claimed a lien upon it for the security of payments made by him for the specified purposes, or even that one in privity with him might have done so. But, so far as Lant is concerned, his rights have been forfeited. It seems to us that those claiming under him are in no better position than he. Appellees do not contend otherwise, and seem to base their claims on some duty owed them by Kahnt or obligation assumed by him.

Appellees, however, are strangers to the contract by which the fund was appropriated, if it was appropriated. They dealt with Lant, just as appellant did, in the faith that he would perform his obligations. Both have been disappointed. There is no equity in holding appellant responsible for Lant's default.

So there is nothing to support this judgment, except the alleged facts that appellant promised to pay for the supplies before they were furnished, and that he named a particular source of a future fund from

JANUARY TERM, 1927 541

Kahnt v. Jones McKeen Merc. Co. et al., 32 N. M. 537

which payment should be made. The equitable consideration is that the supplies furnished were beneficial to appellant, and contributed more or less to the creation of the fund. It is doubtful under the findings and evidence whether any such promise was made. But, considering that it was made, the facts are not sufficient. A mere promise to pay out of a particular fund does not amount to an equitable assignment or create an equitable lien. There must be also an appropriation of the fund, placing it beyond the control of the promisor, and conferring a complete and present right in the promissee, and such that the holder may not only safely pay, but may be compelled to pay, though forbidden by the promisor. Smedley v. Speckman (C.C.A.) 157 F. 815 This is the rule even in cases where "the fund was created through efforts and outlays of the party claiming the lien." See the following texts and the authorities they cite: 37 C. J. "Liens," § 21; 3 Pomeroy's Equity Jurisprudence (4th Ed.) §§ 1280, 1282; Jones on Liens, §§ 48-52. Upon these principles and authorities, invoked by appellant, we find nothing to cast doubt. From them it seems clear that the court erred in establishing liens in favor of the interveners.

The judgment must therefore be reversed, and the cause remanded, with a direction to the trial court to dismiss appellees' petitions in intervention.

It is so ordered.

PARKER, C. J., and BICKLEY, J., concur.