# Philadelphia Dressed Beef Co. v. Porter

*Howard Richard,* p.p. petitioner.

*Michael T. McDonnell, Jr., Ralph S. Levitan, Joel Friedman,* and *C. Norwood Wherry,* for respondents.

CATANIA, J., October 18, 1968.—This matter has been remanded by the Supreme Court of Pennsylvania with instructions for us to determine whether or not Alfred L. Porter's attorney is entitled to a charging lien and following this, to distribute the balance of said fund prorata to the creditors of Alfred L. Porter.

Following the order of the Supreme Court of Pennsylvania, we held a hearing for the purpose of determining whether the attorney for Alfred L. Porter was entitled to a charging lien on said fund. From the testimony taken at that time and from the record of the case, we make the following:

## FINDINGS OF FACT

1. Petitioner (Howard Richard, Esquire) was contacted by Alfred L. Porter in the latter part of 1960 concerning a claim against him by the Philadelphia Dressed Beef Co. in the approximate sum of $2,241.

2. Upon investigation, petitioner discovered that a judgment had been entered against Alfred L. Porter by confession and he recommended to Porter that a

petition to open the judgment be filed. The judgment was opened in April of 1961.

3. Following the opening of the original judgment note, a pretrial conference was held in which it was decided that since there were claims on both sides well in excess of the original judgment note, that the Philadelphia Dressed Beef Co. would file a complaint setting forth all their claims against Alfred L. Porter and that Alfred L. Porter would file an answer and counterclaim setting forth all his contentions.

4. At the time Alfred L. Porter first consulted the petitioner concerning the $2,241 claim, he paid the petitioner $125 on account of fee and costs, the balance to be determined at a later date.

5. Subsequent to the time of the pretrial conference, petitioner and Alfred L. Porter discussed his fee. It was agreed, in view of Porter's poor financial condition, that petitioner would handle the entire defense as well as the counterclaim on a contingency basis and a power of attorney was executed by Mr. and Mrs. Alfred L. Porter calling for 50% of the amount recovered on the counterclaim.

6. At the time the contingency fee arrangement was entered into, Alfred L. Porter did not have funds with which to pay petitioner on a straight fee basis.

7. The only funds ever paid to the petitioner were the original $125 at the start of the proceedings.

8. The cost of suit totaled $565.76.

9. At the present time Alfred L. Porter is possessed of no funds with which to pay attorney fees.

### DISCUSSION

The first issue to be decided is whether or not the attorney for Alfred L. Porter is entitled to a "charging lien" against a judgment recovered as a jury verict.

"The right of an attorney to secure an equitable charging lien upon a fund has been frequently recog-

nized by the appellate courts of the Commonwealth: McKelvy's & Sterrett's Appeal, 108 Pa. 615, is a landmark decision on the subject. In that case, a controversy had arisen out of an award made to Sterrett and others by a master's court. Sterrett's attorney, Neill, moved to have his fee paid out of the share of his client, Sterrett. An auditor was appointed and he found that Neill was entitled to his fee. This Court, affirming the decree entered below, stated that counsel had no lien upon the fund but, since its existence was due to counsel's efforts and since it had been agreed that compensation was to be from the fund recovered, counsel was and would be treated as the 'equitable owner' to the extent of his fees. It further appeared that Sterrett, the client, was insolvent": Recht v. Clairton Urban Redevelopment Authority, 402 Pa. 599, 604.

In reviewing numerous authorities, the court in the Recht case went on to conclude, "that before a charging lien will be recognized and applied, it must appear (1) that there is a fund in court or otherwise applicable for distribution on equitable principles, (2) that the services of the attorney operated substantially or primarily to secure the fund out of which he seeks to be paid, (3) that it was agreed that counsel look to the fund rather than the client for his compensation, (4) that the lien claimed is limited to costs, fees or other disbursements incurred in the litigation by which the fund was raised and (5) that there are equitable considerations which necessitate the recognition and application of the charging lien": Recht v. Clairton Urban Redevelopment Authority, supra, p. 608.

Applying those principles to the present case, we feel that the attorney for Alfred Porter has established a clear case for the use of this doctrine.

(1) The proceeds of the judgment in favor of Alfred L. Porter do constitute a fund which are applicable for equitable distribution.

(2) The services of the attorney for Alfred L. Porter were obviously the primary factor in securing this fund.

(3) The contingency fee agreement entered into between the attorney and Alfred L. Porter indicates that the attorney was to be paid from the funds secured as a result of the counterclaim in the litigation. It is also clear from the wording of the agreement and the financial circumstances of Alfred L. Porter that the attorney was not looking to him for compensation.

(4) The lien claimed is limited to costs and fees.

(5) It is clear from the testimony and the record that if the attorney's fees are not paid from this fund, no compensation will be paid to the attorney. The client, Alfred L. Porter and his wife, are from what appears on this record insolvent. If Porter's attorney is not granted an equitable charging lien, other attaching creditors will consume this fund. We think that equity and justice demand that we find the attorney entitled to this lien since his efforts created the fund from which Porter's creditors desire to satisfy their claims. Without his efforts there would be no fund. He at least should be compensated first.

We find, therefore, that the attorney for Alfred L. Porter is entitled to $6,153.86 attorney's fee and $565.76 costs, or a total of $6,719.62 from the total fund, leaving a balance to the other creditors of $5,588.11. . . .