KANSAS CITY ex rel. R. H. WILLIAMS, Appellant, v. LUTHER DAVIDSON and AMERICAN BONDING COMPANY OF BALTIMORE, Respondents.

.KANSAS CITY ex rel. ONAHOME REALTY COMPANY, Appellant, v. LUTHER DAVIDSON, and AMERICAN BONDING · COMPANY OF BALTIMORE, Respondents.

Kansas City Court of Appeals, January 2, 1911.

1. **PRINCIPAL AND SURETY: Payment by Contractor in Work.** A contractor's surety for hire under section 20, article 9, of Kansas City charter of 1889 is liable on its bond whether the

laborer or materialman agreed to take his pay from the contractor in money or its equivalent, where, when the materialman is to be paid in work, the value of the unperformed work may readily and accurately be equated in money.

2. ————: **Sureties for Hire: Insurers.** Sureties for hire, are not favorites of the law, entitled to stand upon the strict terms of their obligations, but their status is rather that of insurers, and their contracts at least should be reasonably construed to give effect to the protective purposes of their execution.

3. ————: **Payment by Contractor in Work: Damages.** Where, in lieu of money, a contractor agrees to pay for dirt taken from plaintiff's premises, by doing other work thereon, the measure of plaintiff's recovery is the reasonable value of the agreed work which remained unperformed.

4. ————: ————: **Failure of Proof.** Where plaintiffs, the owners of adjacent tracts, prove that on and adjacent to each tract defendant contractor has failed to fill in excavations aggregating 3982 cubic yards, but do not prove the amount of filling remaining unperformed on each tract, this is such a failure of proof as to prevent recovery.

Appeal from Jackson Circuit Court.—*Hon. John G. Park*, Judge.

AFFIRMED.

*Aleshire* and *Gundlach* for appellant, Onahome Realty Company.

*Rosenberger, Taylor & Reed* for appellant, R. H. Williams.

*Harry B. Walker* and *Ball & Ryland* for respondents.

JOHNSON, J.—The above entitled suits were brought separately but were tried together under the following agreement: "It is agreed by counsel for all the parties in both cases that these causes may be tried together, but that separate judgments may be rendered herein without prejudice to the rights of

either plaintiffs or the defendants to any legal cause of action, priorities or defenses which they may have, or either of them, and it is further agreed by all the parties that the legal effect of the trial of these causes together shall be the same as if the cause of action 30831, Kansas City to the use of Onahome Realty Company against these defendants, had been brought upon intervening petition in the other case." A jury was waived and the court, after hearing the evidence, made and filed findings of fact and conclusions of law and rendered judgment for defendants in each case. The respective plaintiffs appealed.

The causes of action are founded on the alleged breach of a contractor's bond executed by Luther Davidson as principal and the American Bonding Company of Baltimore as surety. Davidson entered into a contract with Kansas City to grade Prospect avenue from Thirty-fifth street to the south City limits and, pursuant to the provisions of section 20, article 9, of the charter of Kansas City (1889), executed and delivered the bond in suit, which was conditioned "to pay for the work and labor of all laborers . . . employed on the work and for all materials used therein."

The Onahome Realty Company owned a tract of twenty acres on the east side of Prospect avenue and, on November 1, 1905, entered into an oral contract with Davidson, by the terms of which Davidson was granted the privilege of taking dirt from the tract to use in making necessary fills in grading the street, and in return, he agreed to do certain specified work for the Realty Company for the improvement of the tract. Under this contract, Davidson had removed some earth from the north half of the tract when, on July 20, 1906, the Realty Company sold the north half to Harry G. Stevenson who, on the same day, sold it to the usee, Williams. The following written contract entered into

by the parties that day, plays an important part in the present controversy:

"This agreement made in triplicate between the Onahome Realty Company, Harry G. Stevenson and Luther Davidson, all of Kansas City, Missouri, witnesseth:

That on or about November 1, 1905, the Onahome Realty Company being the owner of the northwest quarter of the southwest quarter of the northwest quarter of section twenty-seven, township forty-nine, range thirty-three, in Jackson county, Missouri, made a contract with Luther Davidson who had prior thereto obtained a contract from the city of Kansas City to grade Prospect avenue, from 35th to 49th st., it was then agreed by the said Luther Davidson that in order to secure dirt to make the grade from 45th to 47th st., the said Davidson would open 46th st., east of Montgall and also to put a dam in on Chestnut st., also fill the excavation on the east side of Prospect avenue north of 46th st., up to and including a certain plum patch and being a distance of about 400 feet, and also to fill the excavation running south of 46th st., about 250 feet, to the south side of the ravine running in a northeasterly direction.

"The said Onahome Realty Company has this day made and executed a deed to said real estate to Harry G. Stevenson, and it is agreed by and between all the parties hereto, that in consideration of the said Davidson having the dirt to make the grade as above described, he is to do the work hereinbefore mentioned and fill the excavations in a workmanlike manner, and said dirt is to be taken from the land herein described and take it from such part of said land as may be designated by the said Harry G. Stevenson and leave said land in good condition on completion of the job, and take it from that portion of the land that will least damage it, if any. The earth is to be taken away

from the land evenly and in such a manner that the surface of said land shall remain even and unbroken and in no place to be left lower than three feet above the grade of the nearest street.

"This contract runs to the benefit of said Harry G. Stevenson and his assigns, that is to say, the party or parties to whom said Harry G. Stevenson may convey said land, shall be entitled to exercise all the rights under this contract that the said Harry G. Stevenson could himself exercise and shall be entitled to all the benefits thereunder that the said Harry G. Stevenson could himself be entitled to thereunder.

"That said Davidson agrees that he will commence the work at once and complete the same on or before August 15, 1906.

Dated at Kansas City, Missouri, this 20th day of July, 1906.

  ONAHOME REALTY COMPANY,
  (Signed) By ED. E. ALESHIRE, President
  (Signed) L. DAVIDSON,
  (Signed) HARRY G. STEVENSON.

"Having conveyed the above property this day to R. H. Williams, for value received, I hereby assign all my rights hereunder to said R. H. Williams.

  July 20, 1906. (Signed) HARRY G. STEVENSON."

After the date of this contract, Davidson removed more earth from the ten acre tract bought by Williams and in return did some, but not all of the work he was to do on the twenty acres. He received all of the dirt he bargained for, but failed to fill holes on the twenty acre tract which the contract required him to fill. This filling would have required an aggregate of 3982 cubic yards which, at twenty cents per yard, the reasonable cost, would have amounted to $796.40. The evidence does not show how much of

154 App—18

this filling would have been on the ten acres retained by the Realty Company and how much on the ten acres sold to Williams. As we have said, all of the dirt removed by Davidson was taken from the ten acres bought by Williams, but the evidence does not show the respective quantities removed before and after the conveyance to Williams.

The facts stated are drawn from the findings of fact filed by the trial judge. His conclusions of law were as follows:

"1. The burden rests upon the usee to make out his case by the greater weight of credible testimony, and by testimony of a reasonably certain and definite character. This burden of proof rests upon plaintiff throughout the trial and the consideration of the issues.

"2. The measure of damages, if any, in this case, is the reasonable value of earth furnished by plaintiff to defendant Davidson, less amounts, if any, paid by Davidson to plaintiff, or the reasonable value of work done by Davidson for plaintiff.

"3. Exhibit 'B' is collateral to the contract and bond of defendant Bonding Company, and tends to extend the liability of said defendant and testimony as to cost of doing or completing the work specified in Exhibit 'B' is stricken out.

"4. The usee has failed to sustain the burden of proof resting upon him to show the amount of earth removed from the land after acquisition of title.

"5. The record shows that against this indefinite debit charge to be made against defendants for earth furnished, there is a credit to be entered in their favor for work done, and the amount of this credit is not shown with reliable accuracy. In order to fix liability under the covenant of guaranty, both amounts must be definitely shown.

"6. Plaintiff having failed to prove the net sum due, the finding and judgment must be for defendants."

Section 20, article 9, of the charter of the City (1889) which is conceded to be an integral part of the contract of suretyship is, in part, as follows:

"Contracts for making improvements on streets, sidewalks, avenues or alleys, or for constructing sewers, let to the lowest bidder, shall contain a covenant on the part of the contractor or contractors with the city, to pay for the work and labor of all the laborers and teamsters, teams and wagons employed on the job and for all materials used therein, and performance of such covenant be guaranteed by two or more sureties signing the contract, whose sufficiency shall be approved as provided by ordinance, but who shall not be liable beyond the estimated cost of the materials used and the labor done upon the job, to be stated in the contract; provided, that the city shall not be liable for the sufficiency of the contractors or sureties, nor for any failure to comply with or irregularity in complying with this provision. Laborers and teamsters and owners of teams and wagons who may do work, and parties who may furnish materials stipulated for by any such contract, may recover in an action in the name of the city for their use, in which no costs shall be adjudged against the city, and all costs not adjudged against the defendant shall be adjudged according to equity against the persons for whose use the suit may be prosecuted, all money due them for labor and materials, or either, not exceeding the estimated cost of the labor and materials as stated in the contract; and such recovery may be had against the contractor and sureties, or either, as in chancery; but it shall not be necessary to file with the petition the original contract. Suit may be brought for the benefit of all laborers, teamsters and owners of teams and wagons on the job, and for materials used in the performance thereof,

and the amount due them be ascertained by the court or referee, unless the court direct an issue as to the amount due one or more laborers or others, or for materials, to be tried by a jury; pending the suit, laborers, teamsters and owners of teams and wagons, and parties who have furnished materials for the performance of the contract, not mentioned in the petition, whether they have done work or furnished materials before or after the commencement of the suit, may become parties to the proceedings by appearing and filing in the action a written statement of their demand. Such notice thereof as the court may direct shall be given to the defendant, and reasonable opportunity to defend shall be given. The proceedings shall, as far as practicable, be governed by the rules and principles of courts of chancery, so as to afford speedy and adequate relief according to the spirit and letter of this section.''

It is contended by defendants that there can be no liability on the bond for the breach of an executory contract. Counsel argue:

'"The court will observe that this statutory action in the name of the city to the use of the claimants is limited to the recovery of 'all money due them for labor and materials or either.' The court will observe also that by no fair construction of this statute or charter provision was there any contemplation of the recovery which might be suffered by the breach of an executory contract.''

The prime object of the charter provisions we have quoted was to afford laborers and materialmen who might furnish labor and material for works of public improvement the protection of a good and sufficient contractor's bond. Whether the laborer or materialman agreed to take his pay from the contractor in money or its equivalent is immaterial to the purpose of the law. In either case, he is entitled to the protection of the bond. This is the reasonable interpreta-

tion of the language of the charter and of the bond and we perceive no reason for applying a strained con-struction to release the surety. In cases where the doc-trine that the surety is a favorite of the law obtains, the contract of suretyship "is to be construed accord-ing to what is fairly to be presumed to have been the understanding of the parties without any strict tech-nical nicety." [Beers v. Wolf, 116 Mo. 179.]

Certainly in cases such as the present where the surety is a surety for hire, this rule of construction should be followed. Such sureties are not favorites of the law, entitled "to stand upon the strict terms of their obligations," but their status is rather that of insurers and their contracts at least should be reason-ably construed to give effect to the protective purposes of their execution. In the present case, dirt for filling was treated as a valuable commodity which the Realty Company owned and would sell and Davidson needed and would buy. We apprehend no one would argue that the Realty Company could not recover on the bond had Davidson agreed to pay twenty cents per yard for the dirt in money. Instead of this, he agreed to pay for it in the equivalent of money, i. e., in work. Failing to perform his undertaking, there could be no good reason in law or morals for denying a recovery on the bond on account of such breach, since the value of the unper-formed work may readily and accurately be equated in money.

But the difficulty of the positions of plaintiffs is that the findings of fact filed in the respective cases do not show the quantum of damages suffered by each plaintiff on account of the breach. We regard it as immaterial that all of the dirt taken by Davidson was removed from the Williams tract, nor do we deem im-portant the failure to show the respective quantities of dirt taken before and after the conveyance to Wil-liams. As we view the agreement of the parties, Wil-

liams was to have a specified amount of work done on his tract and the Realty Company a specified amount on the ten acres retained by it, in consideration of the dirt Davidson was permitted to take from the Williams land. No fraud or mistake in this contract being charged, the presumption is that the work Davidson agreed to do would be a fair equivalent in value for the dirt he received and, consequently, the measure of the reccvery of each plaintiff was the reasonable value of the work Davidson agreed to do on his premises and which he failed to perform. To illustrate:

If the 3982 cubic yards of filling that should have been done on both tracts consisted of 3000 yards that would have been used on the premises of Williams, then he would be entitled to a judgment of $600, and the Realty Company to $196.40. But the findings of fact do not state the amount of filling to be done on each tract. Counsel for plaintiffs insist that the findings which were the same in the two cases do state that 3982 cubic yards would be required on each tract, but we understand the statement to be that 3982 yards of filling would be required on both tracts and that no attempt was made by the court to make a division between them. The language of the respective findings is that "*On and adjacent to* usee's land there are excavations agreed by Davidson to be filled but now unfilled, aggregating 3982 cubic yards, which would cost twenty cents per cubic yard to fill." Evidently the words we have italicized referred in each case to the tract owned by the plaintiff in the other case. These findings of fact must be accorded the force of a verdict of the jury. If a jury had found, as the trial court did, that the amount of filling required to be done on both tracts was 3982 yards we could not say as a matter of law that the verdict was contrary to the evidence. There is evidence of rather a vague character, mere unverified estimates, cursorily made tending to show

that the filling on the Williams tract would amount to 3982 cubic yards, but the estimates places the filling on the other tract at not to exceed 3600 yards and we can understand how the court in making due allowance for inaccuracies in such evidence lumped the filling on both tracts at 3982 cubic yards. We shall not go behind this finding and, since it does not make any division between the two tracts, and there is no evidence from which we could make one on the basis of 3982 cubic yards for both, we cannot do otherwise than to say, as did the trial court, that plaintiffs have failed in their proof and, therefore, are not entitled to recover.

Accordingly the judgment is affirmed. All concur.