The Title Guaranty and Surety Company of Scranton, Pennsylvania, *v.* State of Indiana, ex rel. The Leavenworth State Bank.

[No. 8,609. Filed June 18, 1915. Rehearing denied January 14, 1916. Transfer denied March 17, 1916.]

1. Assignments.—*Action on.*—Where the bond of a contractor for the construction of a public highway was conditioned for the payment of all debts incurred in the prosecution of the work, including labor and materials furnished, a bank, claiming to be the assignee of the claims of laborers and materialmen, was authorized, if its position was really that of an assignee, to maintain an action by virtue of such sale and assignment against the surety on the contractor's bond, in case of default in payment, in the absence of anything in the contract of assignment precluding the right to maintain such action. p. 272.

2. Highways.—*Contractor's Bond.—Assignment of Claims.—Action.*—Where it appeared that claims for material and labor furnished in the construction of a highway were sold and transferred to plaintiff, and that in a transaction with the contractor that became connected with such transfer the contractor agreed, either with the laborers and materialmen or with plaintiff, to pay the claims out of the fund that would become due for building the road under the contract, such agreement by the contractor did not amount to an assignment creating a lien on such fund, and in no way restricted the rights of plaintiff as an assignee of the claims of such materialmen and laborers to prosecute an action on the bond of the contractor, in view of the fact that it was conditioned for the payment of all debts incurred in the prosecution of the work, including labor and material furnished. p. 273.

NOVEMBER TERM, 1915.    269

Title Guaranty, etc., Co. v. State, ex rel.—61 Ind. App. 268.

3. LIENS.—*Equitable Liens.*—A mere agreement to pay out of a fund is not sufficient to creat a specific equitable lien on the fund for the payment of the debt involved.  p. 273.

4. HIGHWAYS.—*Action on Contractor's Bond.*—*Assignments.*—*Evidence.*—In an action on the bond of a contractor for the construction of a highway, brought by a bank claiming to be the assignee of claims for labor and material furnished, where the evidence showed an arrangement between plaintiff and the contractor whereby plaintiff was to honor the checks given by the contractor to laborers and materialmen, that the arrangement was carried out by the bank paying the checks or orders, which showed the purpose for which they were intended, that the contractors had no funds in the bank, but at intervals executed notes to the bank for amounts advanced by it, such bank was not an assignee so as to sue on the contractor's bond conditioned for the payment of the claims of laborers and materialmen, although it was further shown that the bank preserved such checks to be used in settlement with the contractor, and made no entry of their payment on its books.  p. 275.

5. BONDS.—*Contractor's Bond.*—*Construction.*—*"Including".*—The word "including" as used in the bond of a contractor, conditioned for the payment of all debts incurred in the prosecution of the work, including labor and materials furnished, expresses the idea of a class comprehending as a part of its members certain things specifically mentioned or to which particular attention is directed, and the class indicated by the expression "debts incurred" is not necessarily exhausted by the specific debts referred to as growing out of labor preformed and material furnished, so that the bond literally interpreted secures the payment of all debts incurred in the prosecution of the work.  p. 279.

6. PRINCIPAL AND SURETY.—*Contract.*—*Construction.*—A surety for profit is not a favorite of the law, and is deemed an insurer rather than a surety, so that the contract of a surety for profit will be construed most favorably to the person intended to be protected thereby.  p. 280.

7. HIGHWAYS.—*Contractor's Bond.*—*Construction.*—The bond of a highway contractor, conditioned for the payment of all debts incurred in the prosecution of the work, including labor and materials furnished, was liable or an indebtedness due a bank which, pursuant to an arrangement with the contractor, honored the checks of the contractor issued for labor and material used in building the highway.  p. 280.

8. HIGHWAYS.—*Contractor's Bonds.*—*Power of Board of Commissioners.*—While §7723 Burns 1908, Acts 1905 p. 521, §74, requiring the bond of a contractor for the construction of a highway to be conditioned for the payment of laborers and materialmen, did not require a condition for the payment of all debts incurred, the board of county commissioners had authority to accept a bond with such additional requirement and holders of general claims against the

contract, incurred in connection with the work, could sue on such bond. pp. 281, 291.

9. APPEAL.—*Review.*—*Harmless Error.*—*Variance.*—In an action on the bond of a contractor by one claiming to be an assignee of claims for labor and material, where the evidence showed that plaintiff was not an assignee but that the indebtedness was due plaintiff through a direct arrangement between plaintiff and defendant, the variance between the pleading and proof was immaterial in view of a showing that a right result was reached, and the complaint was deemed amended to conform to the proof. pp. 290, 294.

From Harrison Circuit Court; *William Ridley*, Judge.

Action by the State of Indiana, on the relation of The Leavenworth State Bank, against The Title Guaranty and Surety Company of Scranton, Pennsylvania, and others. From a judgment for relator, the defendant named appeals. *Affirmed.*

*Major A. Downing, Samuel A. Lambdin* and *Major W. Funk*, for appellant.

*Evan B. Stotsenburg* and *John H. Weathers*, for appellee.

CALDWELL, J.—This action was prosecuted by appellee against appellant, as surety, and Fisher and Stabler, as principals, on a bond given to secure the performance of a contract for the construction of a free gravel road. The cause was tried on the second paragraph of amended complaint hereinafter referred to as the complaint, the material allegations of which are to the following effect: By a proceeding regular in all respects, the Board of Commissioners of Crawford County entered into a contract in writing with Fisher and Stabler, for the construction of a free gravel road in said county. Said contractors filed with their bid, a bond which was duly approved by the county auditor. The bond was conditioned that the contractors should enter into a contract for the performance of the work, and should faithfully perform the same, and should

"promptly pay all debts incurred by them in the prosecution of said work, including labor, materials furnished and for the boarding of the laborers thereon". Copies of the contract and bond were made parts of the complaint. It is further alleged that the contractors in prosecuting said work failed to perform the conditions of their bond, in that they failed to 'pay for labor and materials furnished by a large number of persons, a tabulated statement of which is made a part of the complaint. The allegations of the complaint that become important in view of the questions raised respecting its sufficiency are as follows: "That said laborers and materialmen transferred their claims to this relator for full value, and with the agreement with said contractors that said claims should be paid out of the fund for building said road, and this relator paid said laborers and materialmen the full value of said claims, and now holds the same; that all of said labor so mentioned therein, and all of said materials went into the construction of said free gravel road", etc. There are other allegations that the amount and value of said claims is $2,500; that payment was demanded and refused, and that said sum is due and unpaid.

Appellant's demurrer for want of facts, filed to the complaint, was overruled, whereupon appellant answered by general denial. A jury trial resulted in a verdict against appellant in the sum of $2,250, on which judgment was rendered, and from which judgment this appeal is prosecuted. The following questions are properly presented for review: (1) The overruling of the demurrer; (2) the sufficiency of the evidence to sustain the verdict; (3) the overruling of appellant's motion for a peremptory instruction at the close of appellee's evidence in

chief; (4) the overruling of a like motion at the close of all the evidence.

As we interpret appellant's argument directed against the complaint, it is to the effect that there is no allegation that the claims were trans-

1. ferred to appellee absolutely; that it appears from the complaint that the claims were assigned to appellee pursuant to a supplemental or independent contract to the effect that they should be paid out of the designated fund, as evidenced by the language "with the agreement with said contractors that said claims should be paid out of the funds for building said road"; that the right to resort to the bond constitutes no part of such fund, and that appellant was not surety for the performance of such independent or additional contract, and hence can not be held liable in this action. The incurring of the indebtedness by the contractors for labor and materials furnished and used in the performance of the work, and the failure of the contractors to pay such indebtedness when due rendered appellant liable in an action brought on the bond by the persons who performed such labor and furnished such materials, in the absence of a transfer of the claims so arising. If the claims were sold and assigned to appellee, then appellee became authorized, by virtue of such sale and assignment, to maintain an action on the bond against appellant as surety, in case of default in payment, unless there was something in the contract of assignment that precluded the right to maintain such action. *Hart* v. *State, ex rel.* (1889), 120 Ind. 83, 21 N. E. 654, 24 N. E. 151; *Lane* v. *State, ex rel.* (1896), 14 Ind. App. 573, 43 N. E. 244.

We proceed to determine whether there was anything in the contract of assignment, as appears

from the complaint, to which such an effect
2.   must be ascribed.   It plainly appears from
the complaint that said claims were sold and
transferred to appellee, and that appellee thereby
became the owner of them.   There is a further aver-
ment to the effect that at the time the claims were
transferred, or at some other time, and in a trans-
action that became connected with such transfer,
the contractors agreed either with the laborers and
materialmen or with appellee, that they would pay
the claims out of the fund that would become due
to them for building the road under the contract;
in short, the contractors simply agreed that they
would collect said fund and apply it on the claims.
It seems to be appellant's construction of said
alleged agreement that thereby the contract price
for building the road became a special or primary
fund set apart for the payment of these claims, to
which it was the duty of appellee to resort, to the
exclusion of any right to have recourse to the bond,
and that as appellant did not sustain the relation of
surety to the arrangement out of which such duty
arose, appellant can not be held liable in this action.
We can not agree that appellant is right in such
contention.   From the facts alleged, it does not
appear that a specific right to resort to such fund
arose, unless from such facts it may be gathered that
thereby said fund was assigned to the end that said
claims might be paid, or that thereby a lien
3.   on such fund was created for that purpose.
A mere agreement to pay out of a fund is not
sufficient to create a specific equitable lien on the
fund for the payment of the debt involved.   *Burke
v. Child* (1875), 21 Wall. 441, 22 L. Ed. 623.   Para-
phrasing the language used by the Supreme
2.   Court of this State as applicable here, it was
the duty of the contractors, as we have said,
VOL. 61—18

to pay the claims, and their promise to pay them out of a particular fund imposed no additional legal obligation upon them. The promise to pay the claims out of the fund named conferred no benefit on appellee, as such promise did not operate as an assignment to appellee of the fund or give appellee control of it. Such promise did not operate as an assignment of the fund or create a lien thereon. *Ford* v. *Garner* (1860), 15 Ind. 298. "In order to constitute an assignment, either in law or equity, there should be such an actual or constructive appropriation of the subject-matter assigned, as to confer a complete and present right on the assignee, even where the circumstances do not admit of its immediate exercise. A covenant, on the part of the debtor, to apply a particular fund in payment of the debt, as soon as he receives it, will not operate as an assignment; for it does not give the covenantee a right to the fund, save through the medium of the covenantor, and looks to a future act, on his part, as the means of rendering it effectual; while the characteristics of an assignment are, the relinquishment of all legal or equitable interest by the assignnor, and the creation of a new and independent right in the assignee." *Ford* v. *Garner, supra,* quoting 2 Lead. Ca. Eq. pt. 2, 233. See, also, *Burton* v. *Morrow* (1892), 133 Ind. 221, 229, 32 N. E. 921; *Tiernan* v. *Jackson* (1831), 8 L. Ed. 234, note; *Christmas* v. *Gains* (1871), 14 Wall. 69, 20 L. Ed. 762; *Walker* v. *Brown* (1896), 41 L. Ed. 865, note; *Siegmund* v. *Kellogg-Mackay-Cameron Co.* (1906), 38 Ind. App. 95, 99, 77 N. E. 1096; *Harrison* v. *Wright* (1885), 100 Ind. 515, 50 Am. Rep. 805; 4 Cyc 47; 2 R. C. L. 615. Moreover, the suit here is not based on the promise to pay the claims out of the fund named. It is grounded on the bond. It is not contended that the alleged

promise released the contractors from the obliga- tion to pay generally. Such contention would be unavailing under the facts alleged. If the contrac- tors were not released from such general obligation to pay, and if there was no assignment of the fund or lien created thereon, appellant was not affected by such promise, and on default in payment, lia-. bility on the bond arose. The promise to pay out of the fund gave appellee no new or additional cause of action. On default in payment, appellee's cause of action became as complete without such promise as with it. In either case, appellee became entitled to maintain an action against the contractors on the claims, or against them and appellant on the bond. For the payment of a judgment recovered in any such suit, recourse might be had to said fund, not specifically as a fund appropriated for that pur- pose, but generally as any other fund or property might be subjected to that end. *Ford* v. *Garner,* *supra,* 302. The court did not err in overruling the demurrer to the complaint.

We proceed to consider the sufficiency of the evi- dence. The following facts were established with- out contradiction: About the time the work of building the road was commenced, the contractors arranged with appellee bank that the former should issue, to persons who performed labor and furnished materials in building the road, checks drawn on appellee bank, and that appellee should pay these checks when presented, and that the contractors should reimburse appellee out of the funds received for the work, as estimates were made. Pursuant to such arrangement, the con- tractors issued to laborers and materialmen a large number of checks, which were paid by appellee as presented. A number of such checks were presented in person by the payees, and others came to appel-

276        APPELLATE COURT OF INDIANA,

Title Guaranty, etc., Co. v. State, ex rel.—61 Ind. App. 268.

lee, and were paid after they had been cashed by
other banks. · In all cases, the checks bore the
endorsements of the payees. Each check showed on
its face that it had been drawn for labor performed
or material furnished in building the highway.
Appellee designated these checks as orders. No
entry of their payment was made on appellee's
books, but they were preserved to be used in set-
tlement with the contractors. The contractors at
no time had a deposit in the bank against which the
checks were drawn, but they were in all cases paid
out of funds of the bank. When checks to the
amount of $400 had been paid, the contractors
executed to appellee a promissory note for that
sum, and two additional notes for $750 and $1,000
respectively, when additional checks aggregating
those respective amounts had been paid. The
notes were entered on the books of the bank. At
the trial appellee designated them as memoranda,
rather than notes. The contractors failed to dis-
charge their obligations held by the bank. The
laborers and materialmen to whom the checks
were issued were not parties to the arrangement
made between appellee and the contractors, and had
no knowledge of the same.

It is contended by appellee that under these facts,
the claims represented by such checks and after-
wards embodied in said notes or memoranda were
not satisfied and discharged as obligations in the
transaction in which appellee advanced and paid
to the holders thereof the sums represented by them,
but that they were thereby kept alive and passed
to appellee as assignee thereof and that, as such
assignee, appellee was authorized to maintain this
action on the bond, because of the failure of the
contractors to pay them in the hands of appellee,
as debts incurred by the contractors by reason of

labor performed, and materials furnished in the building of the road. If appellee did thereby become such assignee, then under authorities already cited, appellee is correct in such further contention. Appellant, however, takes the position that the transaction as arranged and carried out was in the nature of a loan of money and the satisfaction and payment of claims rather than their assignment; that the claims thereby lost their identity, and a new indebtedness originated, based on such loan, and that such new indebtedness is not covered by the provisions of the bond respecting the payment of the claims incurred through labor done and material furnished. In our judgment, appellant is right in such contention. By an arrangement between appellee and the contractors, and to which the laborers and materialmen were not parties, and of which they had no knowledge, appellee agreed to advance the money to be used in the payment of the claims as it should be needed for that purpose, which money the contractors agreed to repay to appellee. There was no evidence of any agreement or understanding that the claims should be deemed to be assigned and kept alive in the transaction in which they were in fact paid. The checks were issued, presented, endorsed and paid as other checks, save for the presence of the distinguishing feature that the drawers had no funds in the bank from which such payment should be made. By reason of such distinguishing feature, the bank might have contracted for the purchase and assignment of the claims. Such a contract, if made and executed, would have resulted in the preservation of the claims in their original nature. The bank in fact, however, contracted to advance the money for the payment of the claims, and that the contractors should repay to the bank the money so

advanced. This arrangement was executed. There was no fact or circumstance shown indicating that the payees of the checks contracted to assign them or that they understood that they were so doing. To us it seems that there can be no doubt that the bank might have maintained an action against the contractors on the new indebtedness as such, and as so created. The transaction could not amount to both an absolute assignment of an existing indebtedness and the creation of a new indebtedness respecting the same items. The agreement here was express, and hence it can not successfully be contended that the law will presume an assignment. We hold that under the evidence the claims were not assigned, and that this action can not be maintained on the bond, for their nonpayment, as claims for labor done and materials furnished. See the following: United States v. Rundle (1901), 107 Fed. 227, 46 C. C. A. 251, 52 L. R. A. 505; Martin v. Michigan, etc., R. Co. (1886), 62 Mich. 458, 29 N. W. 40; Hardaway v. National Surety Co. (1907), 150 Fed. 465, 80 C. C. A. 283; affirmed in Hardaway v. National Surety Co. (1909), 211 U. S. 552, 29 Sup. Ct. 202, 53 L. Ed. 321; Dudley v. Toledo, etc., R. Co. (1887), 65 Mich. 655, 32 N.W. 884. Our attention is called to Missouri, etc., R. Co. v. Brown (1875), 14 Kan. 557. The opinion in that case contains but a meager statement of the facts involved. From such facts, it seems to us to be out of harmony with the weight of authority. An effort is made in Martin v. Michigan, etc., R. Co., supra, to distinguish it on the ground of the scope of the Kansas statute. Except as distinguished, the supreme court of Michigan in the Martin case declines to follow it.

The conclusion at which we have thus arrived necessitates a reversal, unless it be that another

view of the case justifies an affirmance. As we have indicated, the bond here is conditioned, among other things, that the contractors "shall promptly pay all debts incurred by them in the prosecution of said work, including labor, materials furnished", etc. We are required to ascertain, first the relation existing between the ideas expressed respectively by the words "all debts incurred", etc., and "labor, materials furnished", etc., as indicated by the word "including". The connection in which this word is used under various circumstances may shape its meaning somewhat. Under some circumstances, or in some connections, perhaps, it may be used as a word of limitation. or enumeration; that is, to the effect that certain specific things mentioned comprise all of the class designated by some general expression. In the quoted provision of the bond here, the word "including", in our judgment, is used to express the idea of a class comprehending as a part of its members certain things specifically mentioned or to which particular attention is directed; that is, the class indicated by the expression "debts incurred", etc., is not necessarily exhausted by the specific debts referred to as growing out of labor performed or material furnished. The purpose as expressed by the bond is to secure the payment of debts incurred in the prosecution of the work. Among such debts are those growing out of labor performed and material furnished. But if there are other debts, regardless of their nature or origin, that sustain such an intimate, immediate and exclusive relation to the building of the road that it may be said that such debts were incurred in the prosecution of that work, they too are covered by the provisions of the bond literally interpreted. See *Montello Salt Co.* v. *State* (1911), 221 U. S. 452, 31 Sup. Ct. 706, 55 L.

Ed. 810, Ann. Cas. 1912 D 633, 22 Cyc 62, notes; 4 Words and Phrases, "including" 3500.

Appellant is a surety for profit, rather than for accommodation. Such a surety is not "a favorite of the law". Its status is in the nature of an

6.  insurer rather than a surety. It follows that if the contract of suretyship here is fairly open to two constructions, that construction will be adopted which is most favorable to the persons intended to be protected by the bond. *United States Fidelity, etc., Co.* v. *Poetker* (1913), 180 Ind. 255, 102 N. E. 372; *Kansas City* v. *Davidson* (1910), 154 Mo. App. 269, 133 S. W. 365; *Hormel & Co.* v. *American Bonding Co.* (1910), 33 L. R. A. (N. S.) 513, note.

From our statement of the facts, it appears that as one of the steps in the prosecution of the work of building the road, the contractors made the

7.  arrangement with appellee for the payment of the claims for labor to be done and material furnished. This arrangement was made with specific reference to such work. All the claims involved in this action were paid by appellee under such arrangement. They were claims for labor performed and materials furnished in the building of the road. It would, therefore, seem that the contractors' liability thus arising is an indebtedness "incurred by them in the prosecution of said work". In *City of Alpena* v. *Title Guaranty, etc., Co.* (1909), 158 Mich. 678, 123 N. W. 1126, a statute involved required that contracts for public work be accompanied by a bond to secure the payment of all claims for labor performed and materials furnished in prosecuting the work. It is there held that claims for labor performed and materials furnished in repairing a dredge and other machinery used by the contractor in performing the work were not covered

NOVEMBER TERM, 1915.    281

Title Guaranty, etc., Co. *v.* State, ex rel.—61 Ind. App. 268.

by the bond. The basis of the decision is that the repairs rendered a utility available not only for performing the particular work, but with a surplus of the utility over, that might be used in other work. It is apparent that that decision is sound. If it should be held that such a claim were within the surety contract of liability, it would follow that a claim arising from the purchase of a new dredge required in performing the work, but which might also be used in conducting many subsequent enterprises of a like nature, or with a surplus value on the market, is also covered by such a bond. That case is easily distinguishable from the case at bar. The benefit which the contractors here arranged to receive from appellee was of such a nature that it could not be applied on any work except the building of the road. It was so applied, and thereby exhausted with no surplus over. See, also, *Standard Boiler Works* v. *National Surety Co.* (1912), 71 Wash. 28, 127 Pac. 573, 43 L. R. A. (N. S.) 162, note.

Apparently the proceeding involved here for the building of the free gravel road was brought and prosecuted under the provisions of §62 *et seq.* of the act of 1905 (Acts 1905 p. 521, §7711 Burns 1908), commonly known as the three-mile gravel road law, although that fact does not specifically appear. Section 74 of that act being §7723 Burns 1908, Acts 1905 p. 521, provides among other things, that with his proposal, each bidder "shall submit his bond   *   *   *   to the approval of the board, conditioned for the faithful performance of the work   *   *   *   which bond shall be for the benefit of any person or corporation who shall suffer loss or damage by reason of any failure or neglect of such bidder to enter into a proper contract   *   *   *   , or to pay for any labor or material

282     APPELLATE COURT OF INDIANA,

Title Guaranty, etc., Co. v. State, ex rel.—61 Ind. App. 268.

therefor that shall have been furnished either to him or to any sub-contractor, agent or superintendent under him." The bond here is conditioned among other things that the contractors "shall promptly pay all debts incurred by them in the prosecution of said work, including labor, materials furnished and for the boarding of laborers thereon." It is thus apparent that the bond here is conditioned more broadly than required by said section, in that it contains the provision respecting the payment of all debts incurred and all claims for boarding laborers. There is, however, no statute that prohibits a board of county commissioners from taking or requiring a bond thus broadly conditioned. Section 4 of the act of 1899 (Acts 1899 p. 170, §5592 Burns 1901), makes it the duty of boards of commissioners in receiving bids for certain public works to take a bond conditioned in the exact language of the provision above quoted from the bond involved here. Independent of the statute last mentioned, the situation here presents the question of whether the board exceeded its power in causing to be inserted in the bond the provision for the payment of debts incurred by the contractors in the prosecution of the work, regardless of the nature or origin of said debts, or in accepting a bond voluntarily executed and so conditioned, and whether such provision is enforceable. The question has frequently come before the courts as to whether boards of county commissioners and municipal authorities have the power, in the absence of an express statutory grant, to insert in such a bond an enforceable provision for the payment of claims for labor performed and materials furnished in the construction of the public work involved. With practical uniformity, it has been held that while such public bodies may exercise only granted powers, yet

that express authority to cause the work to be performed carries with it the incidental power to do all proper acts reasonably necessary to that end; and that by virtue of such incidental power, such bodies may cause such a provision to be inserted in the bond, in the absence of express statutory authority to that effect.

The right to exercise such incidental power in cases where the public body is authorized to contract for improvements is sustained on the theory that thereby skilled labor and good materials may be more easily procured, and as tending to promote justice and equity among all persons contributing to the performance of the work. See the following: *United States Gypsum Co.* v. *Gleason* (1908), 135 Wis. 539, 116 N. W. 238, 17 L. R. A. (N. S.) 906; *Knapp* v. *Swaney* (1885), 56 Mich. 345, 23 N. W. 162, 56 Am. Rep. 397; *Des Moines, etc., Works* v. *Marxen & Rokahr* (1910), 87 Neb. 684, 128 N. W. 31; *American Surety Co.* v. *Lauber* (1899), 22 Ind. App. 326, 53 N. E. 793; *Young* v. *Young* (1899), 21 Ind. App. 509, 52 N. E. 776; *Williams* v. *Markland* (1896), 15 Ind. App. 669, 44 N. E. 562; *Brown* v. *Markland* (1899), 22 Ind. App. 652, 53 N. E. 295; *King* v. *Downey* (1900), 24 Ind. App. 262, 56 N. E. 680; *Hines* v. *Consolidated Coal, etc., Co.* (1902), 29 Ind. App. 563, 64 N. E. 886; *City & County* v. *Hindry* (1907), 40 Colo. 42, 90 Pac. 1028, 11 L. R. A. (N. S.) 1028, note; *Jenkins* v. *Chesapeake, etc., R. Co.* (1913), 49 L. R. A. (N. S.) 1166, note 1183; *National Surety Co.* v. *Hall-Miller, etc., Co.* (1913), 104 Miss. 626, 61 South. 700, 46 L. R. A. (N. S.) 325; 29 Cyc 1040; 4 McQuillin, Mun. Corp. §1690. Where such a body is authorized to contract for public improvements, if it may by virtue of such incidental power take an enforceable bond to secure the payment of claims for labor and

material, no reason occurs to us why such a bond may not be taken containing an additional provision securing the payment of any other debt incurred by the contractor in pursuing the work, where the nature of the debt is, such that the improvement not only was to but also actually did receive its full and exclusive benefit.

In *City of Philadelphia* v. *Nichols* (1906), 214 Pa. St. 265, 63 Atl. 886, where a public improvement ordinance specified the scope of the bond, it was held that a bond voluntarily given, but more comprehensive than specified, might be enforced according to its terms. In that case, and in others in harmony with it, importance is attached to the element that the bond involved was voluntarily given, and that it was not prohibited by statute. In some instances such bonds are enforced as common-law rather than statutory obligations. See the following: *Waterous, etc., Co.* v. *Village of Clinton* (1910), 110 Minn. 267, 125 N. W. 270; *Farr* v. *Rouillard* (1899), 172 Mass. 303, 52 N. E. 443; *McIntire* v. *Linehan* (1901), 178 Mass. 263, 59 N. E. 767; *Stephenson* v. *Monmouth Min., etc., Co.* (1897), 84 Fed. 114, 28 C. C. A. 292; *Whitsett* v. *Womack* (1845), 8 Ala. 466; *Miller* v. *Vaughn* (1884), 78 Ala. 323; *United States* v. *Maurice* (1823), Fed. Cas. No. 15,747; *United States* v. *Hodson* (1870), 77 U. S. 395, 19 L. Ed. 937; *United States* v. *Tingey* (1831), 5 Pet. *115, 8 L. Ed. 66. In *United States* v. *Hodson, supra*, the bond involved was given by a distiller to secure a compliance with the revenue statutes. The court in holding the bond enforceable as given, although broader in its provisions than required by statute, said: "The record is silent as to any coercion or duress. The bond is, therefore, to be considered a voluntary one. A bond in this form is not prohibited by the statute,

nor is it contrary to public policy. It was founded on a sufficient consideration, and it was intended to subserve a lawful purpose." The government was the obligee in the bond involved in that case, and also in the bond involved in *United States* v. *Tingey*, *supra*. In the former, the court in commenting on the latter said: "The bond was held to be valid. The decision was put on the grounds that the government had the capacity to make the contract, that the United States were a body politic, and that, as an incident to its general right of sovereignty, it was competent to enter into any contract not prohibited by law, and found to be expedient in the just exercise of the powers confided in it by the Constitution." The question being one of power, we fail to see the distinction between the validity of an act done by the government pursuant to a power incident to sovereignty, and an act done by a board of commissioners pursuant to a power incident to authority expressly granted.

There is, however another viewpoint from which this case should be considered. As we have indicated, the highway proceeding involved here was apparently prosecuted under the act of 1905, of which §7723 Burns 1908, *supra*, is a part. The bond here, however, as we have said, is conditioned in the language of §4 of the act of February 27, 1899, being §5592 Burns 1901, *supra*, which in so far as concerns the provision for the condition of the bond is the same as §1 of the act of March 14, 1877 (§4246 R. S. 1881, §5592 Burns 1894), and §4 of the act of February 27, 1899 (Acts 1899 p. 170, §5592 Burns 1901), *supra*, and §5 of the act of April 10, 1907. Acts 1907 p. 580, §5897 Burns 1908. *State, ex rel.* v. *Sullivan* (1881), 74 Ind. 121, involved a bond given in a proceeding to construct a road under the provisions of the act of March 3, 1877. Acts 1877 p. 82, §6855 Burns

286    APPELLATE COURT OF INDIANA,

Title Guaranty, etc., Co. v. State, ex rel.—61 Ind. App. 268.

1894, §5091 et seq. R. S. 1881. Section 5 of that act (§5095 R. S. 1881) required that the contractor give "such reasonable security for the proper performance of his contract * * * as the county commissioners may deem expedient." A bond was in fact given by the contractor, conditioned not only for the proper performance of the work, but also that the contractors should "promptly pay all debts incurred by them in the prosecution of such work, including labor and the boarding of laborers at work thereon." It was held that §4246 R. S. 1881, supra, was authority for taking such a bond. This section provides that "no bid for the building or repairing of any court house * * * or other county building or work shall be received or entertained * * * unless such bid shall be accompanied by a * * * bond * * * which bond shall guarantee the faithful performance of the work * * * and that the contractor * * * shall promptly pay all debts incurred by him in the prosecution of such work, including labor, materials furnished and for boarding the laborers thereon." There is a like holding in Dewey v. State, ex rel. (1883), 91 Ind. 173; Faurote v. State, ex rel. (1887), 110 Ind. 463, 11 N. E. 472; and Hart v. State, ex rel. (1889), 120 Ind. 83, 21 N. E. 654, 24 N. E. 151. In the Faurote case, the court said: "Section 4246 is a general provision and applies to all bonds taken in connection with contracts for public works, which boards of commissioners are authorized to make." But in State, ex rel. v. McCray (1892), 5 Ind. App. 350, 32 N. E. 341, involving a suit on a bond given in a highway proceeding brought under the act of July 18, 1885 (Acts 1885 p. 162, §6879 et seq. Burns 1894), it was held that such bond could not be supported or extended in its terms by recourse to said §4246 R. S. 1881,

§5592 Burns 1894. Section 10 of the act of 1885 (Acts 1885 p. 162, §6888 Burns 1894) provides that a bond shall accompany the bid, but the act is silent as to the conditions of the required bond. The decision in the McCray case is based on two grounds: (1) a specific admission that the bond was executed under the provisions of said §10; (2) the fact that under the latter act, the superintendent of construction is required to receive the bond, and that he alone is authorized to sue on it, while the bond provided for by said §4246, *supra*, is taken by the commissioners, and that laborers and others as beneficiaries thereunder may sue on it. *State, ex rel.* v. *McCray, supra*, seems to be in conflict with *Lane* v. *State, ex rel.* (1896), 14 Ind. App. 573, 43 N. E. 244. In the latter case, it is held that in a highway proceeding, brought either under the act of 1877, *supra*, or under said act of 1885, a bond may be taken and enforced under the provisions of said §4246 R. S. 1881, *supra*, the court saying that there can be no doubt that a bond given by a contractor under the act of 1885 is governed by §4246, *supra*, citing *State, ex rel.* v. *Sullivan, supra*, and *Herrod* v. *State, ex rel.* (1896), 15 Ind. App. 648, 43 N. E. 144, 44 N. E. 378. The Lane case endeavors to distinguish the McCray case on the ground that the bond involved in the former contained a condition that the contractors "should promptly pay all debts incurred by them in the prosecution of the work, including labor, materials furnished and for the board of laborers", as provided by §4246, thus indicating that the bond was executed with a view to that section. It is somewhat difficult, however, to harmonize the two cases. It may be said also that *Hart* v. *State, ex rel., supra*, does not seem to be in entire accord with *Faurote* v. *State, ex rel., supra*, and *Robling* v. *Board, etc.* (1895), 141 Ind. 522, 40

N. E. 1079, in certain particulars. The disparity, however, if it exists, is not important here. There are some reasons in support of a conclusion that none of the cases cited are controlling in the situation presented by the case at bar. Thus, the road involved in each of the cases, *State, ex rel.* v. *Sullivan, supra; Dewey* v. *State, ex rel., supra; Faurote* v. *State, ex rel., supra;* and *Hart* v. *State, ex rel., supra,* was built under the act of March 3, 1877. Section 5 of that act (§5095 R. S. 1881, *supra*) made provision for a bond by the use of general language, that the successful bidder "shall give such reasonable security for the proper performance of his contract * * * as the county commissioners may deem expedient." The road involved in *Lane* v. *State, ex rel., supra,* was built under the act of 1885. Section 10 of that act (§6888 Burns 1894, *supra*) provided merely that "a bond executed by the bidder * * * shall accompany such bid." The act was silent as to the scope of the bond. The court in *Faurote* v. *State, ex rel., supra,* in holding that a bond may be taken under the provisions of said §4246 R. S. 1881, *supra,* where the road is built under said act of March 3, 1877, bases the decision on the fact that §5095, *supra,* provided generally that reasonable security be given, while §4246, *supra,* described specifically the character of all bonds to be taken by county commissioners on letting contracts for the construction of county work. It would seem that the basis of the decision in the Faurote case would not support a like decision in the case at bar. Section 74 of the act of 1905, under which the road here was built, being §7723 Burns 1908, *supra,* provides specifically respecting the scope of the bond, in that it shall be conditioned for the faithful performance of the work, and that it "shall be for the benefit of any person or corpora-

tion who shall suffer loss or damage by reason of any failure or neglect of such bidder * * * to pay for any labor or material therefor, and that shall have been furnished either to him or to any sub-contractor, agent or superintendent under him."

There is an additional reason: The subject-matter of the act of March 14, 1877, of which §4246 R. S. 1881, *supra*, forms a part, as indicated by its title, is indemnity to counties and protection of laborers, materialmen and others "from loss by persons contracting for county buildings and work." In *State, ex rel.* v. *Sullivan, supra*, and cases following it, in holding that a bond may be given under §4246, stress is placed on the fact that road building by the county commissioners is county work. At the time of the letting of the contract here, the act of February 27, 1899, of which §5592 Burns 1901, *supra*, is a part, had succeeded said act of March 14, 1877. While §4246, *supra*, of the latter act is included in substance in §4 of the act of 1899, *supra*, and the same language is used in each in specifying the condition of the bond, the title of the latter act designates certain specific kinds of county work, as court houses, jails, etc., as the subject-matter of legislation, but employs no general terms to that end. There is then at least some doubt whether it may be said that the bond in the case at bar is authorized by §5592, *supra*. We hold, however, that the board of county commissioners here was authorized to take said bond as conditioned, and that it is enforceable according to its terms. Authority to take such bond as enlarged in scope beyond the provisions of §7723 Burns 1908, *supra*, we prefer to base on the incidental powers of the board rather than on the provisions of said §5592 Burns 1901, *supra*. We do not

regard *State, ex rel.* v. *Fletcher* (1891), 1 Ind. App. 581, 28 N. E. 111, or *United States Fidelity, etc., Co.* v. *Poetker, supra,* as in conflict with our conclusion. A different sort of bond was under consideration in each of those cases, and no question of the incidental or implied powers of a public board or official is involved in either of them.

The complaint declares on claims for labor performed and materials furnished as assigned to appellee. We have held that under the evidence, 9. such claims were paid rather than assigned, and that the transaction relied on as showing an assignment in fact resulted in the creating of an indebtedness in favor of appellee. A case of variance between allegation and proof is thereby presented. It is provided by statute that such a variance is not to be deemed material unless it has actually misled the adverse party to his prejudice in maintaining his action or defense; but where such adverse party shows to the court that he has been so misled and in what respect, the court may order the complaint amended on such terms as may be just. §400 Burns 1914, §391 R. S. 1881. It is further provided that where the variance is not material, the court may direct the fact to be found according to the evidence, or may order an immediate amendment without costs. §401 Burns 1914, §392 R. S. 1881. There is a further provision that no judgment shall be reversed for any defect in form, variance, etc., which might be amended by the court below, but such defect shall be deemed to be amended in the appellate tribunal, and that no judgment shall be reversed where it shall appear to the court that the merits of the cause have been fairly tried and determined in the court below. §700 Burns 1914, §658 R. S. 1881.

These sections of the code when properly applied

NOVEMBER TERM, 1915. 291

Title Guaranty, etc., Co. v. State, ex rel.—61 Ind. App. 268.

tend to promote the ends of justice, and to minimize the effect of errors, and defects, technical in nature. They should not be weakened by construction, but mindful of the rights of the parties that may be injuriously affected, they should be given full force. Here all the material facts were established without contradiction. In short, there is no controversy respecting the facts. Although difficult questions of law are thereby presented, conflicting inferences of fact can not be reasonably deduced from the evidence. Under such circumstances, the complaint should be deemed to be amended to conform to the proof. The complaint being amended, the evidence sustains the verdict. Our discussion of the evidence disposes of other questions that are properly presented. Judgment affirmed.

### On Petition for Rehearing.

CALDWELL, J.—Appellant, by its petition for a rehearing, earnestly and ably contends that the court in its original opinion erred in two material respects, to the following effect: (1) In holding that the bond involved in this action, although broader in its conditions than required by the statute under which it was apparently given, may nevertheless be enforced according to its terms. (2) In applying §§400, 401, 700 Burns 1914, §§391, 392, 658 R. S. 1881, in order that the judgment below might be affirmed.

Respecting the first point, the holding is substantially that where a board of county commissioners is authorized by a statute to contract for the performance of a work of public improvement, it may, by virtue of its incidental powers, require of the contractor the execution of a bond with surety, conditioned for the proper performance of the work and other matters properly

related thereto, even in the absence of a statute
providing that such a bond be taken; that where a
statute requires that a bond be taken, conditioned as
specified by such statute, the board may, by virtue
of such incidental powers, take a bond more broadly
conditioned than required by the statute, pro-
vided the statute does not prohibit the taking of
such a bond, and if the matter of the additional pro-
visions is properly related to the work of the
improvement, and that if such a bond be volun-
tarily given in consideration of the contract it may
be enforced according to its terms.   It is now con-
tended that this court in developing such general
principles and in specifically applying them ran
counter to certain decisions of the supreme court
and also of this court, as *United States Fidelity, etc.,
Co.* v. *Poetker* (1913), 180 Ind. 255, 102 N. E. 372;
*State, ex rel.* v. *Heim* (1915), 58 Ind. App. 654, 108
N. E. 776; and *State, ex rel.* v. *Fletcher* (1891), 1
Ind. App. 581, 28 N. E. 111.

In the Poetker case, a bank cashier's bond was
involved.   It was executed pursuant to a statute,
the terms of which required that the board of direc-
tors take from the cashier a bond with surety, con-
ditioned as specified by the statute.   The bond as
in fact executed contained limitations the effect
of which, literally construed, was to narrow the con-
ditions of the bond as required by the statute.
Under such circumstances, the court held, in an
action brought against the surety on the bond, that
it should be construed and enforced as if it in fact
contained the statutory conditions undiminished
and unqualified.   The question of whether a board
of directors of a bank has the power, in the dis-
charge of the discretionary duties of that office, to
exact from a bank cashier as a part of the contract of
employment, a bond conditioned more broadly than

Title Guaranty, etc., Co. *v.* State, ex rel.—61 Ind. App. 286.

a statutory requirement that a bond with certain specified conditions be taken, or whether such a bond, if given, may be enforced according to its terms, was not involved, and hence not decided. In *State, ex rel.* v. *Heim, supra,* a contract for a public improvement provided that the contractor's bond required by the board of commissioners should contain a certain condition not specified by the statute. The bond as executed in fact contained only the statutory conditions. In a suit brought by the board of commissioners against the surety on the bond, the plaintiff declared on a breach of such additional condition, not in fact contained in the bond. This court held that as the condition involved was not contained in the bond or required by the statute, it could not be read into the bond, and enforced as against a surety, in the absence of an allegation and proof that it had been omitted from the bond by mistake of the parties. It is evident that that case is not in conflict with the decision in the case at bar. *State, ex rel.* v. *Fletcher, supra,* involved a recognizance bond, executed by a defendant, conditioned primarily for his appearance at court for trial. We do not regard that case as controlling here.

As tending to support the original opinion, we call attention to the following in addition to the decisions cited therein: *City of St. Louis* v. *Von Phul* (1896), 133 Mo. 561, 34 S. W. 843, 54 Am. St. 695; *Hamilton* v. *Gambell* (1897), 31 Or. 328, 48 Pac. 433; *Knapp* v. *Swaney* (1885), 56 Mich. 345, 23 N. W. 162, 56 Am. Rep. 397; *Devers* v. *Howard* (1898), 144 Mo. 671, 46 S. W. 625; *City of Philadelphia* v. *Steward* (1900), 195 Pa. St. 309, 45 Atl. 1056; *Bunneman* v. *Wagner* (1888), 16 Or. 433, 18 Pac. 841, 8 Am. St. 306; *Portland* v. *Bituminous Paving Co.* (1898), 33 Or. 307, 52 Pac. 28, 72 Am.

St. 713, 44 L. R. A. 527; *Trustees, etc.* v. *Rausch* (1890), 122 Ind. 167, 172, 23 N. E. 717; *Puget Sound State Bank* v. *Gallucci* (1914), 82 Wash. 445, 144 Pac. 698; *Dolese Bros. Co.* v. *Chaney* (1915), 145 Pac. (Okl.) 1119. 1 Elliott, Roads & Sts. (3d ed.) §646.

As to the second point urged, appellant does not controvert the statement contained in the original opinion to the effect that there is no controversy respecting the facts, and that from them conflicting inferences can not reasonably be deduced. Neither does appellant call attention to any additional defense that it might make or to any additional fact that it might urge in its own behalf on a retrial. Under such circumstances, we believe that the court, as indicated in the original opinion, properly applied the sections mentioned, in order that the judgment below might be affirmed. *Southern R. Co.* v. *Howerton* (1914), 182 Ind. 208, 105 N. E. 1025, 106 N. E. 369; 1 Ency. Pl. and Pr. 608, 610. The petition for a rehearing is overruled.

NOTE.—Reported in 109 N. E. 237, 111 N. E 19. As to liability of surety company as distinguished from that of individual sureties, see Ann. Cas. 1912 B 1087. As to right of one furnishing labor or material to sue on bond given by contractor to property owner, see Ann. Cas. 1916 A 754. See, also, under (1) 5 C. J. 985; 4 Cyc 91, 96; (2) 5 C. J. 913; 4 Cyc 47; (3) 25 Cyc 665; (4) 5 C. J. 916, 924; 4 Cyc 49; (5) 22 Cyc 62, 63; (6) 32 Cyc 306; (7) 37 Cyc 235; (8) 11 Cyc 484; (9) 4 C. J. 749; 3 Cyc 444.