HENRY C. SMITHER ROOFING COMPANY v. HELEN REALTY COMPANY ET AL.

[No. 13,376.   Filed October 4, 1929.]

*Fenton, Steers, Beasley & Klee* and *James C. Jay,* for appellant.

*Whitcomb, Ewbank & Dowden,* for appellees.

McMAHAN, C. J.—Complaint by the Henry C. Smither Roofing Company, appellant in this court, against the Helen Realty Company, the Indianapolis Amusement Company, William T. Rasmussen, receiver for the last-named company, and others, to recover for material and labor furnished in the repair of the roof on the Colonial Theatre Building in Indianapolis, and owned by the realty company. All of the defendants, except the amusement company and the receiver, filed demurrers to the complaint. These demurrers were sustained. Plaintiff recovered judgment against the amusement company and the receiver for the full amount of its demand, while judgment was rendered on the demurrers in favor of the other defendants.

The complaint alleges that, on December 1, 1921, the Helen Realty Company, being the owner of the theatre building, in writing leased the same to the amusement company for a period of 10 years. The rentals, under the lease, amounted to $195,000, payable in monthly installments. Paragraph three of the lease, after reciting that the lessee then had on deposit with the lessor $6,000 as security for the performance of a lease dated March 5, 1915, required that said $6,000 remain on deposit, and that an additional amount be deposited monthly until the total deposited, including the $6,000, amounted to $18,000, which was to be held by the lessor

as collateral security for the performance by the lessee and its guarantors of their obligations under the lease, in manner following:

"Said sum shall be held as security . . . for the payment by the lessee and guarantors herein of the several monthly installments of rent reserved by this lease, and for the performance by said lessee and guarantors of all their other obligations hereunder. . . . The lessee and guarantors herein agree that if . . . the lessee and guarantors herein or either of them should make default in the payment of any installment of rent reserved in this lease, or in the payment of any other sums herein agreed to be paid by them, or in the performance of any of the obligations of this lease, and if any such default under either of said leases should continue for a period of thirty days, then the lessor shall have the right, and it may, at its option, without notice or demand, apply all or any part of said sum in the payment of rents or other sums so in default," etc.

Paragraph 4 provides the deposit shall be returned to lessee in case of sale by the lessor. Paragraph 6 gives the lessor the right, at its option, on reasonable notice to lessee to pay and discharge any obligation of the lessee which was in any wise prejudicial to the lessor, the amount so paid to be deemed an additional obligation from lessee to lessor. Paragraph 7 requires the lessee to keep the building, including the roof, in good repair. Paragraph 8 provides that lessor is not obligated or required to make any repairs, but gives the lessor the right to inspect and at its option to make repairs at its own expense. Paragraph 9 provides that lessors shall not be responsible for injuries or damages to persons or property from the use or occupancy of the lessee, "and lessee agrees, at its sole cost and expense, to defend lessor and save it harmless from all the same as well as from any and all suits, judgments or decrees commenced, rendered or recovered on

account thereof, and to pay any and all fines, penalties, costs, attorney fees, expenses and judgments imposed, rendered, recorded or incurred therein on account of lessee's occupancy, possession and use of said premises during said term." Other paragraphs provide that lessee shall pay for all gas, water, heat, electricity and power, and, at its expense, replace broken doors and windows; keep the premises clean and obey all laws and ordinances regulating the use of buildings; prohibit the doing of anything that will increase fire hazard; prohibit subleasing or assignment of lease; and on expiration of lease, require lessee to deliver possession of premises in good repair, natural wear, fire and unavoidable casualty excepted.

The defendants Bingham and Cohen signed the lease as guarantors for the performance of the provisions required of the lessee, except the provision requiring the $18,000 deposit. The defendant Sommers signed a separate instrument, in which he guaranteed the lessor would hold the $18,000 and account for the same, subject to the terms of the lease.

Appellant contends that the $18,000 guaranty fund was deposited as security for the payment of claims like the one mentioned in the complaint, and that it is entitled to have such portion of that fund as may be necessary applied to the payment of its claims, and that it was entitled to a personal judgment against Bingham and Cohen by reason of the fact that they signed the lease as guarantors.

In support of the first contention, appellant cites and relies on *Miller* v. *Billingsly* (1873), 41 Ind. 489; *Rodenbarger* v. *Bramblett* (1881), 78 Ind. 213; and *Hogshead, Admr.,* v. *State, ex rel.* (1889), 120 Ind. 327, 22 N. E. 330.

In the Miller case, Baily Hayes gave Miller a draft, with directions that, when he received the money, he was to pay $100 to Hayden Miller, $500 to Billingsly

and to keep the balance as a loan. The action was in equity for money had and received for the use and benefit of Billingsly.

In the next case, Ramblett became surety for Noah Rodenbarger and one Witty on a note given one Swain for the purchase of a horse. Witty sold his interest in the horse to the appellant, John Rodenbarger, who, in consideration thereof, assumed and agreed to pay the note to Swain, who indorsed the note to another, who brought suit thereon and recovered a judgment against the two principals and the surety. The surety, having been compelled to pay the judgment, brought suit against John Rodenbarger, who had assumed and agreed to pay the note. It was correctly held that the promise of John Rodenbarger to Witty inured to the benefit of the surety, who, having paid the debt, was subrogated to the right of Witty and entitled to judgment against John Rodenbarger on his promise to pay.

In *Hogshead, Admr., v. State, ex rel., supra,* Hogshead became surety for Purcell as guardian of a minor. The guardian loaned part of the ward's money, taking a mortgage on certain real estate, which the guardian afterwards purchased, and, as part of the consideration of such purchase, agreed to pay the mortgage debt. The guardian later released the mortgage but did not pay the mortgage debt. The guardian was afterwards removed and his successor, Allen, filed a claim against the estate of the surety.

It is clear that these cases are not in point, and are of no controlling influence in the instant case. None of them sustains appellant's contention that it is entitled to have any part of the $18,000 applied to the payment of its claim. The particular provision in the lease which appellant contends gives it that right is found in paragraph three of the lease, which provides that: "The lessor shall have the right and it may, at its option, with-

out notice or demand, apply all or any part of the said sum in the payment of rents or other sums so in default." As we understand the lease, the "rents or other sums so in default" are rents and other sums due and owing the lessor in the payment of which the lessee has defaulted. This is made clear by a reading of the whole sentence of which the above quotation is a part. The material part of this sentence is the provision whereby the lessee and guarantors agreed that "if the lessee and guarantors herein or either of them should make default in the payment of any installment of rent reserved in this lease, or in the payment of any *other sums herein agreed to be paid by them,* or in the performance of any of the obligations of this lease, and if any such default under either of said leases should continue for a period of thirty days, then the lessor shall have the right [to] and it may, at its option, without notice or demand, apply all or any part of said sum in the payment of rents or other sums so in *default."* (Our italics.)

The deposit was not made for the benefit of appellant. It was not the party or a party intended to be benefited thereby. The lessor had no right to apply any part of the $18,000 except in payment of rent or in the payment of some "other" sum, which the lessee had, by the terms of the lease expressly agreed to pay. If appellant had filed a mechanic's lien on the property and the lessor had been compelled to pay the amount owing appellant in order to release that lien, and lessor was claiming that it had a right to reimburse itself out of the $18,000, a different question would be presented. The purpose of the deposit was to secure the lessor from loss, and not for the protection of the third parties. In order that a third party may have a lien on the funds, the holder of this fund must be authorized to pay claims directly to the creditors without further intervention of the debtor. *Irwin's Bank* v. *Fletcher, etc.,*

*Trust Co., Rec.* (1924), 195 Ind. 669, 145 N. E. 869, 146 N. E. 909; *Reed* v. *Adams, etc., Wire Works* (1914), 57 Ind. App. 259, 106 N. E. 882; *Smedley* v. *Speckman* (1907), 157 Fed. 815. The demurrers of the realty company and of Sommers were correctly sustained. In this connection, see, also, *Dillon* v. *Barnard* (1874), 21 Wall. (U. S.) 430, 22 L. Ed. 673; *Trist* v. *Child* (1874), 21 Wall. (U. S.) 441, 22 L. Ed. 623; *Title Guaranty, etc., Co.* v. *State, ex rel.* (1915), 61 Ind. App. 268, 109 N. E. 237, 111 N. E. 19.

In support of the contention that appellant is entitled to a personal judgment against Bingham and Cohen as guarantors on the lease, appellant cites a number of cases decided by the Supreme Court and by this court. The first of these cases is *Knight & Jillson Co.* v. *Castle* (1909), 172 Ind. 97, 87 N. E. 976, 27 L. R. A. (N. S.) 573. In that case, Castle and Converse, as contractors, entered into a written contract wherein they agreed to furnish the material and labor for, and to place a heating plant in a church and "agreed to pay for all labor and materials used in said work when due, and . . . to deliver said building to said first party freed from all liens or rights thereto." The contractors executed a bond conditioned, *inter alia*, that they would faithfully perform the contract according to its terms. The contractors became insolvent and failed to faithfully perform their contract by failing and refusing to pay for the materials which the plaintiffs therein had furnished the contractors and which they used in the building. In view of the express agreement to pay for the labor and materials, it was there held that the bond covered that provision and that a recovery could be had on the bond, although a recovery was denied for another reason. The court there called attention to *Greenfield Lumber, etc., Co.* v. *Parker* (1902), 159 Ind. 571, 65 N. E. 747, where there was no express agreement, either in the

contract or in the bond, for the payment for labor or material, and where it was held that a general undertaking that the contractor should perform the contract did not run to third persons and that there could be no recovery on the bond for material furnished the contractor. "And this," said the court, "is the true rule and the real distinction."

In the instant case, the lessee agreed to keep the roof of the theatre in repair, at lessee's own cost, but it did not expressly agree to pay for the labor and material used in so doing. The court did not err in sustaining any of the demurrers to the complaint.

Affirmed.