Larry D. CROWEL, Plaintiff-Appellant,

v.

ADMINISTRATOR OF VETERANS' AFFAIRS OF WASHINGTON, D.C., and his Successors and Agents of such office and Chief, Property Management Section, Veterans Administration, Indianapolis, Indiana, Defendants-Appellees.

No. 82-1570.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 23, 1982.

Decided Jan. 26, 1983.

Jerry L. Colglazier, James K. Whitaker & Assoc., Hammond, Ind., for plaintiff-appellant.

Charles B. Miller, Hammond, Ind., for defendants-appellees.

Before BAUER, POSNER and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

This is an appeal from an order of the United States District Court for the Northern District of Indiana, denying the plaintiff's rehearing motion to compel the Administrator of Veterans' Affairs to convey title to a certain piece of real property located in Highland, Indiana to the plaintiff, or in the alternative, to recover money damages. Upon the petition of the defendant the federal district court accepted the removal of the case from the state court pursuant to 28 U.S.C. § 1442. After receipt of consent forms signed by counsel, Magistrate Moody was given the authority to hear the case. Thereupon, the plaintiff and the defendant filed motions for summary judgment, and the magistrate granted the defendant's motion for summary judgment and denied the plaintiff's motion. The plaintiff's subsequent motion for a new trial was denied and the plaintiff appeals. Affirmed.

In June, 1969 Frank and Beverly Paymaster entered into an installment contract with the Administrator of Veterans' Affairs to purchase a certain piece of real estate. The real estate contract provided in part that the Paymasters were to make monthly payments of $90.90, and if the Paymasters defaulted the Administrator, at his option, could terminate the Paymasters' equitable interest in the property. Further, if the Paymasters assigned any portion of their interest in the real estate to another without the prior written consent of the Veterans Administration, the whole of the unpaid balance on the contract would immediately become due and owing. Thus, it is evident the Administrator of Veterans' Affairs retained legal title in the real estate while the Paymasters' interest was only that of an equitable titleholder pursuant to the contract.

In Spring of 1975, Mr. Paymaster called the plaintiff, Larry D. Crowel, and asked him to "come out and look at his home and purchase his (Paymaster's) home." Crowel went to the Paymaster residence, inspected the property and told Paymaster he would need some time to make a decision on the purchase. Several days later, Crowel returned to the Paymaster home and offered to purchase the home upon the occurrence of the following events: (1) Crowel making a $4,500 down payment to the Paymasters; (2) the Paymasters' assignment of their equitable interest in the home to Crowel; and (3) the approval by the Veterans Administration of Crowel's assumption of the Paymasters' mortgage. The Paymasters agreed to Crowel's proposition and signed an "Offer to Purchase."

In April, the Veterans Administration notified the plaintiff Crowel with a letter that the Veterans Administration required that certain documents be filed as a condition precedent to the Administrator of Veterans' Affairs approving the transfer of the Paymasters' equitable interest to Larry D. Crowel: (1) four copies of the assignment of installment contract for the sale of real estate completed and signed by the proposed new purchasers and the sellers; (2) a copy of the sale agreement between the sellers and the proposed purchasers; (3) a copy of the proposed sales closing statement; (4) a financial statement completed by the proposed purchasers; and (5) a credit report on the proposed buyers from a recognized credit agency. In response, the following letter, labeled as a "Letter of Direction" by Crowel's attorney was sent to the Veterans Administration:

### LETTER OF DIRECTION

Comes now the undersigned, FRANK GEORGE PAYMASTER, JR. and BEVERLY JEAN PAYMASTER and state as follows:

1. That on the 12th day of June, 1969, they entered into a certain real estate contract for the purchase of real estate . . . with the Administrator of Veterans' Affairs . . .;

2. That said real estate has not been deeded from the Administrator of Veterans' Affairs to them;

3. That they desire to sell, assign or transfer their interest therein;

4. That the Administrator of Veterans' Affairs is hereby directed to deed said real estate by warranty deed directly to LARRY D. CROWEL and THOMAS R. CROWEL;

5. That BEVERLY JEAN PAYMASTER will receive the sum of five hundred ($500.00) dollars as and for her interest in said real estate; and

6. That said warranty deed to LARRY D. CROWEL and THOMAS R. CROWEL will not be recorded or released until obligations of the PAYMASTERS to the Veterans Administration pursuant to the above mentioned contract have been paid in full.

The above Letter of Direction prepared by Crowel's attorney was not signed by the plaintiff, Larry Crowel, but was signed by Frank and Beverly Paymaster.

Some days after the Paymasters signed the Letter of Direction the date for the real estate closing was agreed upon. Also after the Letter of Direction was signed, Crowel applied for a real estate mortgage loan in the amount of $12,800.00 (the amount the Paymasters owed the Veterans Administration) from Security Federal Savings & Loan Association of Highland, Indiana, and received a mortgage commitment in that amount. Crowel executed and properly recorded the real estate mortgage to secure the $12,800.00 loan intending to use the real estate he was to receive from the Veterans Administration as collateral. Shortly thereafter, the Chicago Title Insurance Company issued a preliminary title insurance commitment.

On the proposed date for the real estate closing Paymaster notified the Veterans Administration that "the deal had fallen through," and at the same time because his account with the Veterans Administration was in arrears, he "indicated a desire to bring his delinquent account to a current status." After making arrangements with the Veterans Administration the Paymasters made several payments on their delinquent account but failed to ever bring their account to a current status and as a result in April of 1976 the Veterans Administration canceled their account for nonpayment, took possession of the property and on July 12, 1978 sold and transferred the property to a disinterested third party.

On August 2, 1976 the plaintiff, Larry Crowel brought an action against the defendant, the Administrator of Veterans' Affairs, in the Indiana state courts for specific performance on the Letter of Direction, or in the alternative, for the fair market value of the real estate ($25,000). The United States District Court accepted the removal of the case pursuant to 28 U.S.C. § 1442(a)(1) and the parties filed cross motions for summary judgment. The court

granted the defendant's motion for summary judgment, reasoning that the Letter of Direction was "nothing more than a tentative proceeding in expectation of an assignment" and did not constitute a valid present assignment to Crowel of the Paymasters' rights and obligations under the installment contract. The magistrate found that because additional steps (such as obtaining the approval of the Veterans Administration, setting a date for closing, establishing an escrow account and working out the details with the Paymasters) were necessary before an interest in the real estate vested in Crowel, Crowel did not have a present enforceable interest in the property and therefore his action for specific performance or in the alternative damages was without merit. The plaintiff's motion for a new trial was denied and the plaintiff appealed.

## ISSUES PRESENTED

1. Did the district court gain subject matter jurisdiction over an action originally brought in a state court and removed to federal court against the Administrator of the Veterans' Affairs Department for specific performance and/or damages on the real estate contract?

2. Did the district court err in granting the defendant's motion for summary judgment?

### 1. *Jurisdiction*

 During oral argument this court, *sua sponte,* raised the question and requested briefs on the issue of whether an action involving the Veterans Administration could originally be brought in the state court and later transferred to the federal district court. Both parties briefed the issue and we now address this jurisdictional issue.

"It is elementary that '[t]he United States, as sovereign, is immune from suits save as it consents to be sued ..., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain this suit.' *United States v. Sherwood,* 312 U.S. 584, 586 [61 S.Ct. 767, 769, 85 L.Ed. 1058] (1941). A waiver of

sovereign immunities 'cannot be implied but must be unequivocally expressed' *United States v. King,* 395 U.S. 1, 4 [89 S.Ct. 1501, 1503, 23 L.Ed.2d 52] (1969). In the absence of clear congressional consent, then, 'there is no jurisdiction ... in any ... court to entertain suits against the United States.' *United States v. Sherwood, supra,* at 587–588 [61 S.Ct., at 770]."

*United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). To resolve this jurisdiction problem, we first look to whether the state court of Indiana had original subject matter jurisdiction. It is well established that "[w]here the state court lacks jurisdiction of the subject matter or of the parties, the federal court acquires none, although in a like suit originally brought in a federal court it would have had jurisdiction." *Minnesota v. United States,* 305 U.S. 382, 389, 59 S.Ct. 292, 295, 83 L.Ed. 235 (1939). *See also Lambert Run Coal Co. v. Baltimore & Ohio R.R.,* 258 U.S. 377, 382, 42 S.Ct. 349, 351, 66 L.Ed. 671 (1922). Thus, to determine if the district court and this court have jurisdiction over the subject matter of the instant action, we must first ascertain whether an action can be brought against the Administrator of the Veterans Administration in the state courts of Indiana.

38 U.S.C. § 1820 provides as follows: "(a) Notwithstanding the provisions of any other law, with respect to matters arising by reason of this chapter, the Administrator may—

(1) Sue and be sued in the Administrator's official capacity in any court of competent jurisdiction, *State or Federal* ....

\*　　\*　　\*　　\*　　\*　　\*

(5) Purchase at any sale, public or private, ... and take title to, property, real, personal or mixed; and similarly sell, at public or private sale, exchange, assign, convey, or otherwise dispose of any such property;" (emphasis supplied).

This section authorizes the Administrator of the Department of Veterans' Affairs to

purchase and/or sell property. In the instant case, the title to the disputed property was originally acquired by the Administrator of Veterans' Affairs in 1961, and thereafter, upon a partial payment of the purchase price an equitable interest in the property was transferred to the Paymasters. This is an action brought to compel the Administrator to transfer both legal and equitable title to the plaintiff Crowelor, alternatively, to recover damages. Under 38 U.S.C. § 1820(a)(5), the Administrator has the authority to buy and/or sell real estate and 38 U.S.C. § 1820(a)(1) grants the Administrator the power to sue or be sued in the state or federal courts.[1] Since it is evident from the above quoted statutes that the Indiana state court had original jurisdiction over the subject matter, we hold the district court also acquired subject matter jurisdiction pursuant to 28 U.S.C. § 1442(a)(1) upon removal.

Our resolution of the question concerning the jurisdiction of the federal courts over the subject matter of the instant dispute does not completely dispose of the question of this court's jurisdiction to hear the plaintiff's appeal. This is so because, as noted above, the plaintiff appeals from the magistrate's order denying the plaintiff's post-judgment motion for a new trial and the denial of a Rule 59 post-judgment motion is not normally an appealable order. However, this court fashioned an exception to this sometimes harsh rule in *Hennessy v. Schmidt*, 583 F.2d 302 (7th Cir.1978), where the court stated:

> "The general practice now followed in the appellate courts, when an appeal is mistakenly taken from the order denying the motion for a new trial when it should have been from the judgment, is to 'regard the error as harmless and treat the appeal as taken from the judgment.' 6A Moore's Federal Practice, ¶ 59.15[1]. We now ... adopt the general rule as stated above, subject to the following qualifications: the judgment from which the appellant intended to appeal must be final; it must be clear what judgment is involved; the motion and appeal must have been timely made; and there must be no prejudice to the other party."

583 F.2d at 306 (footnotes omitted).

Thus, *Hennessy* demands that where, as in the instant case, an appeal is mistakenly

---

**1.** As the plaintiff Crowel no longer seeks equitable relief, we deem it advisable to address the question of the power of the district court to award a money judgment to the plaintiff. The circuits disagree as to the correct reading of a "sue and be sued" clause such as 38 U.S.C. § 1820(a)(1) vis-a-vis the Supreme Court's *F.H.A. v. Burr*, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940) decision. We believe the correct view regarding the suability of a federal agency is that once Congress has earmarked specific funds for an agency's use, those funds are available to pay judgments against the agency, at least where the agency has been given the power to sue and be sued in its own name, as it has been in this case. Applying this test, it is clear that the Administrator may be sued in this case as Congress, by adopting 38 U.S.C. §§ 1811, 1823 and 1824, has earmarked specific funds for the Veterans Administration's use and has given the Administrator the power to sue and be sued in his/her own name. A reading of 38 U.S.C. §§ 1811, 1823 and 1824 shows that specific funds have been set aside to be used by the Administrator to carry out the purposes of the Veterans' home loan program. A judgment awarded in a suit against the Administrator in his/her official capacity could be paid out of these funds.

This conclusion is supported by case law from other circuits. For example, the Second Circuit in *S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28, 36 (2nd Cir.1979), reviewing the suability of an administrator of a federal agency, held:

> "For a claim to be against the Secretary, and therefore within the scope of the 'sue and be sued' clause, as opposed to a suit against the United States, any judgment for plaintiff must be out of funds in the control of the Secretary as distinguished from general Treasury funds.... This requirement is satisfied if the judgment could be paid out of funds appropriated under the National Housing Act and in the control or subject to the discretion of the Secretary.... Since the availability of funds to satisfy any judgment for appellant meets these criteria, the present suit must be treated as one against the Secretary and thus satisfying the 'sue and be sued' clause ...."

(Citations and footnote omitted).

*Accord Industrial Indem., Inc. v. Landrieu*, 615 F.2d 644 (5th Cir.1980).

Accordingly, we conclude that the Administrator may be sued in this case.

taken from the order denying the plaintiff's motion for a new trial, the error is harmless and we will treat the appeal as taken from the final judgment. Moreover, since, as in *Hennessy,* there has been no unfair surprise or other hardship in this case, in fact the parties have briefed the issue, the defendant has suffered no harm from the plaintiff's error and will not be prejudiced by our hearing this appeal. Since the plaintiff's appeal is governed by the *Hennessy* rule, his error in appealing from the magistrate's denial of his motion for a new trial is harmless error. Therefore, we hold that since the magistrate had subject matter jurisdiction to decide whether Crowel had an enforceable interest in the real estate and because the plaintiff satisfied the *Hennessy* requirements, we will now address the merits of the plaintiff's appeal from the magistrate's order granting the defendant's motion for summary judgment.

### 2. *Summary Judgment*

█ In ruling on the parties' cross-motions for summary judgment, the magistrate stated:

"The Court, having thoroughly reviewed the pleadings, briefs, depositions, affidavits and exhibits submitted on the current motions, finds that there is but a single issue of law presented, the resolution of which will be dispositive of this cause of action: whether or not the Letter of Direction issued to the Veterans Administration by the Paymasters constituted a valid assignment to Crowel of rights and obligations under the subject Installment Contract for Sale of Real Estate."

The magistrate went on to analyze whether, under Indiana law, the Paymasters' Letter of Direction to the Veterans Administration was sufficient to convey the Paymasters' equitable interest in the real estate to Crowel. The magistrate concluded that "the ambiguous language of the Letter coupled with the actions of the plaintiff [Crowel] and Paymaster indicate that the Letter was considered as nothing more than a tentative proceeding in expectation of an as-

signment." The magistrate further analyzed Crowel's deposition and concluded:

"Crowel's repeated mention at deposition of (1) setting up a date and place for closing, (2) expecting the Veterans Administration to set up an escrow account, and (3) trying to contact the Paymasters in order to 'complete this' sale, evidences his intention that proceedings in addition to the execution of the Letter of Direction were necessary to consummate the sale of the subject real estate.

\* \* \* \* \* \*

It is the opinion of this Court that the Letter of Direction was not, in and of itself, intended to be an effective assignment. Said Letter was merely a proceeding in expectation of an eventual valid assignment between the Paymasters and the plaintiff, and as such is unenforceable at law. *See* 6A C.J.S. *Assignments* §§ 45, 112, 115 (1975) (and cases cited therein)."

The magistrate granted the defendant's motion for summary judgment ruling the Paymasters' Letter of Direction did not convey a present interest in the real estate to Crowel.

Both parties herein agreed that the district court correctly stated that "[u]nder Indiana law, a determination of whether or not an assignment has been made focuses on the intent of the parties. Any actions or words which show an intention of transferring the chose in action to an assignee for valuable consideration are sufficient." Citing *Li'l Red Barn, Inc. v. Red Barn Systems, Inc.,* 322 F.Supp. 98 (N.D.Ind.1970). Moreover, the parties further agree that the magistrate correctly cited Indiana law when he stated:

"there must be such an *actual or constructive appropriation* of the subject matter assigned *as to confer a complete and present right* on the assignee, even where the circumstances do not admit of its immediate exercise . . . . *Unless there is a relinquishment of all legal or equitable interest* by the assignor, and the creation of a new and independent right in the assignee, *no valid assignment exists.*" (Emphasis supplied).

Citing *Title Guaranty & Surety Co. of Scranton, Pennsylvania v. State,* 61 Ind. App. 268, 109 N.E. 237, 239 (1915). The plaintiff disputes the magistrate's application of the facts herein to these legal standards contending that the Paymasters' Letter of Direction to the Veterans Administration of itself constituted a valid enforceable assignment to Crowel of their (Paymasters') equitable interest in the real estate. Crowel bases this contention on the language in the Letter of Direction that the Paymasters "desire to sell, assign or transfer their interest" in the real estate and that the "Administrator of Veterans' Affairs is hereby directed to deed said real estate" to Crowel. Crowel's argument ignores the fact that the use of the word "desire" reveals that the letter was drafted in anticipation of transferring the property at some future date when certain requirements which were conditions precedent to the transfer were completed. From our independent analysis of the entire record, we hold and agree with the magistrate that the language contained in the Letter of Direction did not convey to Crowel a present, enforceable equitable interest in the property. This conclusion is especially persuasive in light of the fact that any assignment was conditioned upon a prior approval by the Veterans Administration and such approval was never expressly given. Thus, we hold that at the time of the signing of the Letter of Direction Crowel had nothing but the expectation of an assignment of an equitable interest which is unenforceable as to the Veterans Administration. We therefore approve of and agree with the magistrate's order granting the defendant's motion for summary judgment.

Because the Letter of Direction was prepared by Crowel's attorney, according to basic contract principles the Letter of Direction signed by Mr. and Mrs. Paymaster must be construed most strongly against Crowel's position that the letter itself transferred the Paymasters' equitable interest to him. *Chrysler Corp. v. Hanover Ins. Co.,* 350 F.2d 652, 655 (7th Cir.1965). Moreover, it should also be noted that Crowel never

formally agreed to the terms of the Letter of Direction by signing same. Since Crowel neglected to sign the Letter of Direction, its validity at best is questionable. The Letter of Direction contains no language *expressly* reciting that the Paymasters had on that date conveyed equitable title to Crowel. Moreover, we construe the Letter of Direction as analogous to, and it is sometimes referred to as nothing more than a letter of intent which is customarily employed to reduce to writing the preliminary understanding of parties who intend to enter into a contract. The Letter of Direction stated the Paymasters' "*desire* to sell, assign or transfer their interest therein," which the magistrate found revealed the parties intended a future transfer of an interest in the real estate to Crowel. As stated by the Supreme Court of Indiana, *Ford v. Garner,* 15 Ind. 298 (1860):

> "In order to constitute an assignment, either in law or equity, there should be such an actual or constructive appropriation of the subject-matter assigned as to confer a complete and present right on the assignee, even where the circumstances do not admit of its immediate exercise.... [T]he characteristics of an assignment are the relinquishment of all legal or equitable interest by the assignor, and the creation of a new and independent right in the assignee."

*Id.* at 301. Since the Paymasters "desired" to accept the terms of the purchase agreement at a future date (the date of closing) and transfer their equitable interest at that time, we hold that under *Ford v. Garner* no "independent right" was created in Crowel and therefore that no present assignment took place.

In further support of the ruling that Crowel does not have an enforceable equitable interest in the subject real estate, it should be noted that at the time the Paymasters signed the Letter of Direction their account with the Veterans Administration was delinquent. Although after the negotiations with Crowel proved fruitless the Paymasters attempted to bring their account to a current status, they failed to

do so and as a result, pursuant to the terms of the installment contract the Veterans Administration repossessed the home in April of 1976 and terminated the Paymasters' interest in the real estate. It was not until some five months later in August of 1976 that Crowel attempted to enforce his alleged interest in the property. However, because Crowel's alleged interest could only arise out of the Paymasters' equitable interest in the property, and because the Paymasters' equitable interest in the property was terminated in April of 1976, we hold that any interest Crowel claims to have had in the real estate was also terminated at the time the Veterans Administration repossessed the Paymasters' home. Moreover, the Veterans Administration never approved of Crowel's assumption of the Paymasters' mortgage with the Veterans Administration pursuant to the terms of the contract with the Paymasters. Nor did Crowel ever pay the Paymasters the $4,500 down payment as required by the terms of the Offer to Purchase. Thus, Crowel never complied with the steps necessary to complete the real estate transaction. Therefore, we agree with the magistrate that Crowel does not have a present enforceable interest in the real estate and hold the magistrate was correct when he granted the defendant's motion for summary judgment.

As a final point of argument, the plaintiff Crowel asserts that the Veterans Administration lacks standing to challenge the validity of the Paymasters' assignment of their equitable interest to Crowel because the Veterans Administration was a stranger to the Letter of Direction. However, this argument ignores the fact that the Veterans Administration had a continuing legal interest in the property from the time of the Paymasters' purchase of their equitable interest and never relinquished the legal interest. Moreover, the contract between the Veterans Administration and Paymaster provided that if Paymaster assigned his equitable interest without the prior approval of the Veterans Administration, the remaining unpaid mortgage balance became immediately due and owing.

Thus, without the Veterans Administration's approval the Paymasters could not assign their equitable interest in the property until such time as the entire balance was paid in full on the date of the closing. Therefore, because the Veterans Administration retained legal interest in the property and since unless the balance was paid in full (which it was not) their approval was required before the assignment could be effective, the Veterans Administration could not be considered a stranger to the Letter of Direction and thus had standing to challenge its validity. For all the above reasons, the decision of the magistrate denying the plaintiff's motion for summary judgment and granting the defendant's motion for summary judgment is AFFIRMED.